319 F.3d 612
 Abraham FOTTA, individually and on behalf of all other persons similarly situated, Appellant
v.
TRUSTEES OF THE UNITED MINE WORKERS OF AMERICA, Health and Retirement Fund of 1974; Michael Holland; Donald Pierce; Elliot Segal; Joseph Stahl, II
 No. 01-2097.
 United States Court of Appeals, Third Circuit.
 Submitted Under Third Circuit LAR 34.1(a) January 14, 2002.
 Filed February 11, 2003.
 
 Before ALITO and ROTH, Circuit Judges, SCHWARZER,* District Judge.
 OPINION OF THE COURT
 ROTH, Circuit Judge.
 
 
 1
 Appellant, Abraham Fotta, is a disabled miner who had to wait nine years to receive his disability payments. He has now received all the delayed payments but has sued his pension fund, claiming that § 502(a)(3)(B) of the Employee Retirement Income Security Act of 1974 (ERISA) entitles him to the interest that would have accumulated on his delayed payments. After a bench trial, the District Court held that Fotta was not entitled to interest because he failed to prove his disability payments were withheld wrongfully. Fotta raises three issues on appeal. First, did the District Court err by requiring Fotta to prove that the withholding of his disability payments was wrongful? Second, if so, did the District Court err when it found that his payments were not wrongfully withheld? Finally, did the District err in denying class certification to Fotta to represent a class of miners who have received delayed disability payments? After careful consideration, we believe that the District Court correctly answered each of these questions and we will affirm its judgment.
 
 I. Factual and Procedural History
 
 2
 On July 23, 1984, Abraham Fotta, while on his job for the United States Steel Mining Company, Inc., stepped off a motor, twisting his ankle and, as has ultimately been determined, aggravating a pre-existing condition. On the day of the injury, Fotta worked through his shift. He told his foreman about the injury, but no accident report was filed. Fotta waited until the following day to visit his employer's physician, Dr. Eisley. Dr. Eisley found that Fotta had a synovial cyst (a type of tumor) in his ankle and referred him to Dr. Mitchell, an orthopedic surgeon. Dr. Mitchell operated to remove the tumor and at the same time treated Fotta for a fractured ankle.
 
 
 3
 Following the surgery, Fotta's 18 year litigation odyssey began. He first filed a claim for Workmen's Compensation benefits, which was denied on May 10, 1985. The Workmen's Compensation Referee found that Fotta had failed to prove that the mine accident caused his disability. Based on a report from Dr. Mitchell, the Referee concluded that Fotta's disability was caused by his pre-existing villonodular synovitis (recurring ankle cysts), not his accident. Fotta twice appealed this decision, and the Workmen's Compensation Appeals Board twice affirmed the Referee. Fotta then appealed to the Pennsylvania Supreme Court.
 
 
 4
 On July 15, 1985, when his second appeal to the Workmen's Compensation Appeal Board was pending, Fotta received some good news. The Social Security Administration had awarded him disability benefits on the basis of a malignant synovial tumor of the right ankle. Fotta was then able to embark on the next phase of his search for disability benefits. On February 7, 1986, he submitted an application for disability benefits to defendant, the United Mine Workers of America Health and Retirement Fund of 1974. The Fund provides disability payments when an applicant proves that (1) he was involved in a mine accident, (2) he received a Social Security Disability Insurance award, (3) he is an employee covered by the plan, and (4) the mine accident caused the disability. See Section 615.1.12 of the Fund's Pension Processing Manual. When the cause of the disability is not obvious, a mine accident that "substantially aggravates" a pre-existing condition can fulfill the fourth condition.
 
 
 5
 The Fund gathered information concerning Fotta's application. It received records from the Social Security Administration, from Fotta's employer, and from Drs. Mitchell and Eisley. The Fund also reviewed records of the Workmen's Compensation proceedings. After considering this information, the Fund informed Fotta, in a letter dated November 18, 1987, that his application had been denied because he did not "establish that [his] disability was caused by a mine accident." The letter also stated that Fotta could call if he had any questions and that, if he was not satisfied that the decision was correct, he could request a hearing within 90 days. Fotta did not take any action in response to this denial of benefits.
 
 
 6
 Fotta did, however, persist in his Workmen's Compensation appeals. After almost six years of litigation, the Pennsylvania Supreme Court rewarded Fotta's perseverance. On June 1, 1993, the court reversed the Workmen's Compensation Appeal Board and granted Fotta Workmen's Compensation benefits.
 
 
 7
 Buoyed by this success, Fotta returned to his claim for disability benefits from the Fund. On June 15, 1993, he sent the Fund a copy of the Pennsylvania Supreme Court's decision. The opinion mentioned a letter from Dr. Mitchell that the Fund had not previously seen. The letter stated that "the majority of [Fotta's] disability is due to the pigmented villonodular synovitis but the alleged traumatic ankle injury also is contributing to his incomplete recovery." Fotta v. Workmen's Compensation Appeal Board, 534 Pa. 191, 626 A.2d 1144, 1146 (1993). Despite Fotta's failure to appeal the November 18, 1987, denial of disability benefits, the Fund on November 1, 1993, decided in light of the new information that Fotta had established that a mine accident substantially aggravated his pre-existing ankle cysts and awarded disability benefits to Fotta. The Fund initially awarded him $18,835 in retroactive payments. After adjusting the starting date, the Fund paid him an additional $1,965.
 
 
 8
 Fotta, however, was not satisfied. He asked the Fund for interest on the retroactive payments. When the Fund declined to pay him interest, Fotta sued the Fund and the individual defendants in the United States District Court for the Western District of Pennsylvania. He alleged that by failing to pay him interest on his retroactive payments, the Fund violated ERISA requirements promulgated at 29 U.S.C. § 1001 et seq.
 
 
 9
 The District Court originally dismissed his law suit for failure to state a claim under ERISA. Fotta appealed. In Fotta v. Trustees of the United Mine Workers of America Health & Retirement Fund of 1974, 165 F.3d 209 (3rd Cir.1998) (Fotta I), we reversed and remanded the case to the District Court. We held that § 502(a)(3)(B), which empowers courts to award appropriate equitable relief to redress violations of ERISA or ERISA regulated plans, provides a cause of action for interest on delayed pension benefits even when the beneficiary acquired the delayed benefits without resorting to litigation.
 
 
 10
 On remand, the District Court held a bench trial and concluded that Fotta was not entitled to relief because he had failed to show that the delay in paying his disability was due to any wrongful conduct by the Fund. The District Court also denied Fotta's request for class certification because he had failed to demonstrate that the proposed class met the commonality requirement of Federal Rule of Civil Procedure 23(a). Fotta appealed.
 
 II. Jurisdiction and Standard of Review
 
 11
 Because Fotta sued under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq, the District Court had federal question jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.
 
 
 12
 The decision to award pre-judgment interest is within the discretion of the District Court, see Fotta, 165 F.3d at 214, but we exercise plenary review over its interpretation and application of legal precedent. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124 (3rd Cir.2000). We review the District Court's decision to deny class certification for an abuse of discretion. Id. at 136
 
 III. Discussion
 
 A. The Claim for Interest
 
 
 13
 Fotta contends that the District Court used the wrong standard to evaluate his claim for interest. He claims in addition that, even if the District Court had applied the correct standard, it erred in finding that he failed to satisfy it.
 
 
 14
 
 1. Must Fotta prove that the Fund acted wrongfully?
 
 
 
 15
 Fotta's primary claim is that the District Court misapplied § 502(a)(3)(B), using the wrong standard to evaluate his claim for interest. The District Court held that the Fund is liable for interest only if Fotta can show that the Fund "wrongfully delayed" his disability benefits. Fotta contends that he need not prove the Fund acted wrongfully. He asserts that § 502(a)(3)(B) makes the Fund presumptively liable for interest whenever ERISA benefits are delayed, regardless of the reason.
 
 
 16
 Section 502(a)(3)(B) allows a beneficiary of an ERISA plan to sue for "other appropriate equitable relief," which we have held includes interest on delayed payments. See, e.g., Anthuis v. Colt Industries Operating Corp., 971 F.2d 999, 1010 (3d Cir.1992); Fotta I, 165 F.3d at 209. Section 502(a)(3)(B) does not, however, allow a beneficiary to sue for equitable relief for any reason, but only "(i) to redress [violations of ERISA or the terms of an ERISA plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). As we emphasized in Fotta I, § 502(a)(3)(B) "does not ... authorize appropriate equitable relief at large, but only `appropriate equitable relief for the purpose of `redress[ing any] violations or enforc[ing] any provisions of ERISA or an ERISA plan.'" Fotta I, 165 F.3d at 213 (citing Mertens v. Hewitt Associates, 508 U.S. 248, 253, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)). Accordingly, an ERISA beneficiary who seeks interest on delayed payments must first prove that those payments were withheld in violation of his ERISA plan or of ERISA itself. See Jackson v. Fortis Benefits Ins. Co., 245 F.3d 748, 749-50 (8th Cir.2001) (requiring "a showing that the plan was breached before interest on back payments may be awarded under [§ 502(a)(3)(B)]."); Holmes, 213 F.3d at 128 (noting that "ERISA permits actions to recover interest on wrongly withheld benefits"); Clair v. Harris Trust & Sav. Bank, 190 F.3d 495, 497-99 (7th Cir.1999) (holding that ERISA "authorizes suit to redress plan violations," but concluding there was no breach of ERISA or terms of the plan); Anthuis, 971 F.2d at 1007-08 (upholding an award of prejudgment interest when the plaintiff's severance benefits were withheld in violation of an ERISA plan). We conclude that it is clear from the case law that unless a beneficiary proves his payments were wrongfully withheld, he is not entitled to interest.
 
 
 17
 Fotta argues that our opinion in Fotta I contradicts this rule. Fotta cites a single sentence from that opinion: "We now make explicit that interest is presumptively appropriate when ERISA benefits have been delayed." Fotta I at 214. From this, he argues that interest is presumptively appropriate whenever benefits are delayed whether they are delayed wrongfully or not. There is no reason, however, to believe that Fotta I made liability to pay interest independent of wrongdoing.
 
 
 18
 In fact, Fotta I did not even address the issue of liability. It determined who has a cause of action under § 502(a)(3)(B). Before Fotta I, only an ERISA beneficiary who had brought a legal action to recover wrongfully withheld benefits could sue for interest under § 503(a)(3)(B). See, e.g., Anthuis, 971 F.2d at 1010. In Fotta I, we were asked to decide whether a beneficiary who recovered wrongfully withheld benefits without resorting to litigation could sue under § 502(a)(3)(B). Fotta I, 165 F.3d at 211. ("This appeal raises an issue of first impression for this court: whether a beneficiary who has been able to receive his her benefits due under an ERISA plan only after considerable delay, but without resorting to litigation to recover that payment, has a cause of action [under § 503(a)(3)(B)].") We determined that § 503(a)(3)(B) did provide a cause of action for such plaintiffs. We did not, however, address the standard of liability that would trigger an obligation to pay interest.
 
 
 19
 Because Fotta I did not change the standard of liability, the District Court applied the correct standard: a beneficiary is presumptively entitled to interest on his delayed benefits only if those benefits were wrongfully withheld or wrongfully delayed, that is, only if they were withheld or delayed in violation of ERISA or an ERISA plan.
 
 
 20
 
 2. Did the Fund Act Wrongfully?
 
 
 
 21
 Assuming for the sake of argument that the District Court applied the correct standard, Fotta advances an alternative argument. He urges us to reverse the District Court on the basis that the Fund did wrongfully delay his benefits.
 
 
 22
 In order to prove the Fund acted wrongfully. Fotta must meet a high standard. The Fund's plan grants the Fund discretion in making eligibility determinations, giving it in Article VIII.A, B(a) "full and final determination as to all issues concerning eligibility for benefits." Thus, the Fund's eligibility determinations are wrongful only if they are arbitrary and capricious. See Moats v. UMWA Health & Retirement Funds, 981 F.2d 685, 687 (3rd Cir.1992).
 
 
 23
 The Fund provides disability benefits only when the applicant has carried his burden of proving that a mine accident either directly caused his disability or caused his disability by substantially aggravating a pre-existing condition. When the Fund rejected Fotta's claim for disability benefits on November 18, 1987, it concluded that it had insufficient evidence of a mine accident to conclude that a mine accident had caused Fotta's disability by substantially aggravating a pre-existing condition.
 
 
 24
 Fotta challenges this holding. Fotta claims that the Fund acted arbitrarily in several ways. He claims that the Fund failed to inform him of the true reason for its denial. Fotta received the November 18, 1987, letter, however, that informed him he did not qualify for benefits, stating "Your application was denied because: You have not established that your disability was caused by a mine accident." This same letter informed Fotta that, if he was not satisfied that this decision was correct, he could request a hearing.
 
 
 25
 Fotta next claims that the Fund acted arbitrarily and capriciously by failing to ask him for additional medical data or by failing to get more medical data itself. The Fund, however, was diligent in collecting data. It requested medical information from Fotta's employer and examined medical reports from Drs. Mitchell and Eisley. It also examined the records of the Social Security Administration and the findings of the Workmen's Compensation Referee. The Fund's decision to rest on this information would not appear to be arbitrary and capricious.
 
 
 26
 Fotta also claims the Fund acted arbitrarily and capriciously because it concluded there was no mine accident when it was the fault of Fotta's employer, not of Fotta, that no accident report had been filed. The Fund's Pension Processing Manual, however, permits the establishment of the occurrence of a mine accident by an accident report, an employer statement or Workmen's Compensation records. Fotta could have demonstrated the occurrence of the mine accident without an "accident report" per se, as he ultimately did in the Workmen's Compensation proceedings. The employer's failure to file an accident report did not, therefore, preclude Fotta from receiving benefits.
 
 
 27
 Fotta finally alleges that the Fund acted arbitrarily and capriciously by "acknowled[ing] the existence of a causal link between some incident and the injury, contrary to the worker's compensation finding." As support for this allegation, Fotta points to a December 30, 1996, note of a Clinical Consultant from the Fund's Central Office that, "Based on Mitchell's report I accept that there was an ankle injury and that it aggravated a pre-existing tumor." Fotta does not go on, however, to cite the remainder of the paragraph which indicates that the consultant was not convinced how the ankle was injured or where. This report is not, therefore, inconsistent with the November 18, 1987, denial of benefits on the basis of lack of evidence that a mine accident caused the disability.
 
 
 28
 We also note a second reason to uphold the denial of interest. Fotta did not request a hearing to challenge the November 18, 1987, denial of benefits and he waited six years before he presented a renewed request to the Fund for benefits. Section 502(a)(3)(B) allows a plan beneficiary to obtain "appropriate equitable relief" when his benefits have been wrongfully withheld, and, although "interest is presumptively appropriate," Fotta I at 214, it remains an equitable remedy subject to the usual conditions. One of the reasons for denying an equitable remedy is delay by the claimant. As the Eighth Circuit has stated, "prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable. Such circumstances may include bad faith or dilatoriness by the claimant." Stroh Container Co. v. Delphi Industries, Inc. 783 F.2d 743, 751 (8th Cir.1986). We conclude from the facts of this case that Fotta's delay in seeking his benefits would make an award of interest inequitable.
 
 
 B. Denial of Class Certification
 
 
 29
 Fotta also contends that the District Court abused its discretion by denying his motion for class certification on the ground that the putative class did not meet the "commonality" requirement of Federal Rule of Civil Procedure 23. Fotta proposed a class of more than 116,000 miners who are receiving or have received disability benefits following some kind of administrative delay. He argues that, because all the members of the class are presumptively entitled to interest, they share a common question of whether interest is available and what the correct rate of interest should be. Because, however, the putative members of the class are not entitled to interest if their benefits were not wrongfully delayed, they do not share common issues of law or fact and thus do not meet the requirements of Rule 23.
 
 
 30
 A district court can only certify a proposed class if the class meets all four requirements of Rule 23(a) of the Federal Rules of Civil Procedure: numerosity, commonality, typicality, and adequacy of representation. See F.R.C.P. 23(a); In re Prudential Ins. Co. of America Sales Litig., 148 F.3d 283, 308-09 (3rd Cir.1998). Our holding that an ERISA beneficiary is entitled to interest only if the benefits were wrongfully withheld or wrongfully delayed requires us to conclude that the putative class members share no common issues of law or fact. To decide whether each putative class member would be entitled to interest, the District Court would have to determine whether the Fund wrongfully withheld or wrongfully delayed payment for each class member. The District Court would also have to determine the remedy for each class member, an individual determination. As we stated in Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124 (3rd Cir.2000), a belief that "the interest entitlement of every class member can be calculated using a single, objective formula ... ignores [Fotta I's] clear holding that interest on delayed ERISA benefits is an equitable remedy dependent upon the individual facts of each claim." Id. at 137. Because both liability and the appropriate remedy must be determined for each plaintiff, no common issues of law or fact exist. We cannot, therefore, say that the District Court abused its discretion in denying class certification.
 
 IV. Conclusion
 
 31
 For the reasons stated above, we will affirm the judgment of the District Court.
 
 
 
 Notes:
 
 
 *
 Honorable William W. Schwarzer, Senior District Court Judge for the Northern District of California, sitting by designation
 
 
 
 32
 SCHWARZER, Senior District Judge, concurring.
 
 
 33
 I concur in the result reached by the majority but write separately because I arrive at that result by a substantially different route. In Fotta v. Trustees of the United Mine Workers of America, Health and Retirement Fund, 165 F.3d 209 (3d Cir.1998) (Fotta I), this court held that a fund beneficiary may bring an action under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (ERISA), to recover interest from the plan on benefits paid after some delay. Specifically, we held that ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), which permits a beneficiary "to obtain other appropriate equitable relief (i) to redress [violations of ERISA or of the terms of an ERISA plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan[,]" provides a cause of action for a beneficiary to recover interest on benefit payments.
 
 
 34
 The District Court held, and the majority agrees, that to recover interest on delayed payments a beneficiary must prove that benefits were withheld in violation of his ERISA plan or of ERISA itself, i.e., that the denial was arbitrary and capricious. The majority finds support for its position in Fotta I, which states, quoting from Mertens v. Hewitt Associates, 508 U.S. 248, 253, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), that § 502(a)(3)(B) "does not... authorize appropriate equitable relief at large, but only `appropriate equitable relief' for the purpose of redress[ing any] violations or enforc[ing] any provisions of ERISA or an ERISA plan." Op. at 616. But the majority fails to quote this court's statement immediately following: "As we noted above, payment for the time value of money, when appropriate, is an implicit term of the underlying contractual obligation. Therefore, an award of interest is an equitable remedy enforcing an ERISA plan provision, albeit an implied one, within the meaning of section 502(a)(3)(B)." 165 F.3d at 213.
 
 
 35
 Fotta makes clear, therefore, that the delay in payment of benefits to which the beneficiary is entitled is a violation of the plan without more and that recovery of interest enforces the plan. The Fotta I court repeatedly and consistently refers to interest to compensate for delay in payment without ever qualifying that the delay must be shown to have been wrongful. Analogizing the instant claim to an award of prejudgment interest, it explained that "prejudgment interest typically is granted to make a plaintiff whole because the defendant may wrongly benefit from use of plaintiff's money," quoting Schake v. Colt Industries, 960 F.2d 1187, 1192 n. 4 (3d Cir.1992) (emphasis added); see also Anthuis v. Colt Industries, 971 F.2d 999, 1009 (3d Cir.1992).
 
 
 36
 Thus, wrongfulness is an element of the beneficiary's claim only in the sense that the plan's withholding of his money is wrongful in unjustly enriching the plan and depriving the beneficiary. That the court did not intend to condition the cause of action to recover interest on delayed benefits upon proof of a further violation of the plan or of ERISA is confirmed by the court's statement of its rationale:
 
 
 37
 The principles justifying prejudgment interest also justify an award of interest where benefits are delayed but paid without the beneficiary's having obtained a judgment. The concerns animating our decisions in Schake and Anthuis — viz., making the claimant whole and preventing unjust enrichment — are not diminished merely because the plan has paid the overdue benefits without the claimant having resorted to litigation to secure payment. A late payment of benefits effectively deprives the beneficiary of the time value of his or her money whether or not the beneficiary secured the overdue benefits through a judgment as the result of ERISA litigation.
 
 
 38
 Unjust enrichment principles also apply with equal force in this setting. To hold that the absence of a judgment deprives the injured beneficiary of the time value of his or her money would create a financial incentive for plans to delay payment and thus retain interest that rightfully belongs to the beneficiary.
 
 
 39
 165 F.3d at 212.
 
 
 40
 The majority also cites Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124 (3d Cir.2000), which considered Fotta I, albeit in the context of determining the appropriate rate of interest to be paid on delayed pension benefits. The court, in passing and without discussion, referred to Fotta I as holding that a beneficiary was entitled to interest on "wrongfully withheld benefits" whether recovered through judicial action or through nonjudicial means. Id. at 131. In the context of the Fotta I rationale, however, which the Holmes court adopted, that statement cannot fairly be interpreted as imposing a condition of proof of more than unjustified delay. Thus, the court described "Fotta's two primary justifications for interest awards: (1) ensuring full compensation to the plaintiff; and (2) preventing unjust enrichment," id. at 132, and it noted that "Fotta did not impose a requirement of culpability [on the defendant's part ...]." Id. at 133.
 
 
 41
 A case squarely in point not cited by the majority is Dunnigan v. Metropolitan Life Ins. Co., 277 F.3d 223 (2d Cir.2002). Dunnigan sued on her own behalf and on behalf of a class of similarly situated beneficiaries of MetLife's ERISA plan to recover interest on benefits paid subsequent to the date when the participant was entitled to receive payment. The district court dismissed the action for failure to allege bad faith on the part of MetLife. The court of appeals reversed. It held first that interest may be recovered under § 502(a)(3)(B) "[w]hen benefits are paid only after the date on which the beneficiary was entitled to receive them ... [because] the beneficiary has not received the full value of what was promised and, to the same degree, the plan has realized an unjust enrichment (assuming the lateness was unjustified)." 277 F.3d at 229. It then held that no showing of bad faith is required, stating:
 
 
 42
 The opinions of the Third and Seventh Circuits have recognized that interest can be appropriate, equitable "make whole" relief under § 502(a)(3)(B), without any requirement that a plaintiff allege or prove bad faith on the part of the defendant. See Clair v. Harris Trust & Savings Bank, 190 F.3d 495, 498-499 (7th Cir.1999) .... Fotta v. Trustees of the United Mine Workers, 165 F.3d 209, 213 (3d Cir.1998)....
 
 277 F.3d 230. The court went on to state:
 
 43
 Dunnigan's complaint alleges that she was entitled to disability benefits, and that the payment of those benefits was delayed nearly five years.... [I]t asserts that payment of her benefits was unreasonably delayed and made long after she was entitled to receive them. Such a delay enriches the fiduciary at the expense of the beneficiary. Unless such a delay is justified, we see no reason why it does not constitute a breach of fiduciary duty.
 
 
 44
 277 F.3d at 230.
 
 
 45
 The majority also cites Clair v. Harris Trust & Savings Bank, 190 F.3d 495 (7th Cir.1999), yet that case lends no support to its position. While the case was ultimately decided on the merits of the beneficiaries' claims, it had this to say about their entitlement to interest on delayed ERISA benefits:
 
 
 46
 The defendants' position would have the odd implication that if the settlement date were June 30, 1990, and the bank did not cut a check to the retiring employee until July 1, 1991, the employee would have no redress, since he would have received his full plan benefits, albeit ten months after the last date on which he was entitled to receive them under the terms of the plan. The violation of the plan would be plain, but there would be no remedy.
 
 
 47
 190 F.3d at 498 (emphasis added).
 
 
 48
 Only one case appears to be in agreement with the majority. In Jackson v. Fortis Benefits Ins. Co., 245 F.3d 748, 750 (8th Cir.2001), the court affirmed the denial of interest on delayed benefit payments, holding that "a showing [is required] that the plan was breached before interest on the back payments may be awarded under ERISA." It reached that decision on the authority of Clair, Holmes and Fotta I and Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208 (8th Cir.1981). As the foregoing discussion shows, Clair, Holmes and Fotta I do not support the court's holding; those cases stand for the proposition that an unjustified delay in payment of benefits constitutes a violation of the plan entitling beneficiaries to claim interest. And in Dependahl, the Eighth Circuit awarded prejudgment interest, not on the ground that an ERISA violation had been proved (which was necessarily true since plaintiffs had obtained judgment) but on equitable grounds. Quoting from Hodgson v. American Can Co., 440 F.2d 916, 922 (8th Cir. 1971), the court said, "From the inception of the discrimination, American Can was unjustly enriched and the female employees were damaged. During the entire period American Can has had the use of the money, and therefore equity and justice requires payment by way of interest for its use." It continued:
 
 
 49
 We believe these same considerations should be followed in an award of prejudgment interest with regard to an ERISA violation. The former executives [plaintiffs] have been denied their contractual severance benefits for a period of approximately four years before final judgment was rendered. Falstaff has continued to have the use of this money. Furthermore, the exact amount of the liability on the plans was never in issue. The only question was whether the employee benefit plan was binding in light of the "just cause" exception. Under these circumstances, an award of prejudgment interest is necessary in order that the plan participants obtain "appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B).
 
 
 50
 653 F.2d at 1219. Upon analysis, therefore, Fortis provides scant support for the majority's position.
 
 
 51
 In sum, the authorities (with the questionable exception of Fortis) establish that an ERISA beneficiary makes out a cause of action for interest where payment of benefits has been unjustifiably delayed without proof that the plan's action was wrongful in the sense of arbitrary or capricious. Prejudgment interest is, however, an equitable remedy. "[A]warding prejudgment interest is within the district court's discretion, `given in response to considerations of fairness and denied when its exaction would be inequitable.'" Fotta I, 165 F.3d at 213 (quoting Anthuis v. Colt Indus. Operating Co., 971 F.2d 999, 1009 (3d Cir.1992)). The court added that "interest is presumptively appropriate when ERISA benefits have been delayed." 165 F.3d at 214. To the same effect, see Holmes, 213 F.3d at 131.
 
 
 52
 Here, the District Court rejected the interest claim because the delay in payment was due to plaintiff's failure to provide the Fund an accident report, an employer statement or Workmen's Compensation records to establish the occurrence of a mine accident as required under the Fund's rules. The court found, moreover, that after the Pennsylvania Supreme Court decision which first established plaintiff's eligibility, the Fund promptly processed plaintiff's claim and made a lump — sum payment of the benefits he would have received had he established eligibility at the time of his original application. Thus, the Court implicitly found that the delay was justified. In these circumstances, it could not be said that the District Court abused its discretion.