

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-16-2004

# Skretvedt v. EI DuPont de Nemours

Precedential or Non-Precedential: Precedential

Docket No. 02-3620

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Skretvedt v. EI DuPont de Nemours" (2004). *2004 Decisions.* Paper 552.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/552

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 02-3620 & 02-4283

———————

ORRIN T. SKRETVEDT,

Appellant

v.

E.I. DUPONT DE NEMOURS, a
Delaware corporation; PENSION AND
RETIREMENT PLAN; HOSPITAL
AND MEDICAL-SURGICAL PLAN;
DENTAL ASSISTANCE PLAN;
NONCONTRIBUTORY GROUP LIFE
INSURANCE PLAN;
CONTRIBUTORY GROUP LIFE
INSURANCE PLAN; TOTAL AND
PERMANENT
DISABILITY INCOME PLAN;
SAVINGS INVESTMENT PLAN;
TAX REFORM
ACT STOCK OWNERSHIP PLAN;
SHORT TERM DISABILITY PLAN

———————

On Appeal from the
United States District Court
for the District of Delaware
D.C. Civil Action No. 98-cv-00061
(Honorable Mary P. Thynge)

———————

Argued September 16, 2003

Before: ALITO, AMBRO and
CHERTOFF, Circuit Judges

(Opinion filed: June 16, 2004)

John M. Stull, Esquire (Argued)
1300 North Market Street
P.O. Box 1947
Wilmington, DE 19899

*Attorney for Appellant*

Raymond M. Ripple, Esquire (Argued)
Donna L. Goodman, Esquire
Suite D-7012
E.I. DuPont de Nemours & Company
Legal Department
1007 Market Street
Wilmington, DE 19898

*Attorneys for Appellee*

———————

OPINION OF THE COURT

———————

AMBRO, Circuit Judge

Orrin T. Skretvedt seeks, *inter alia*, interest on the delayed payment of benefits due him under two plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Skretvedt received benefits from one of those plans pursuant to a court judgment, while his employer voluntarily paid him benefits under the other plan after that judgment was entered. The Magistrate Judge denied Skretvedt's request for interest with respect to the delayed payment of benefits under both plans in light of the Supreme Court's

decision in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002).

Based on *Anthuis v. Colt Industries Operating Corp.*, 971 F.2d 999 (3d Cir. 1992), we determine that an award of prejudgment interest on a judgment awarding benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), follows the Supreme Court's decisions in *Board of Commissioners of Jackson County, Kansas v. United States*, 308 U.S. 343, 352 (1939), and *Rodgers v. United States*, 332 U.S. 371, 373 (1947), providing that where "[t]he issue is uncontrolled by any formal expression of the will of Congress," *Board of Commissioners*, 308 U.S. at 349, "interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable." *Id.* at 352. Accordingly, we conclude that *Great-West*, construing the scope of "appropriate equitable relief" available to a litigant under ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B), does not apply to a request for prejudgment interest on a judgment awarded pursuant to § 502(a)(1)(B).

With respect to Skretvedt's request for interest on the delayed payment of a second type of benefits that his employer voluntarily paid after much delay, the Magistrate Judge acknowledged that our prior holding in *Fotta v. Trustees of the United Mine Workers of America*, 165 F.3d 209 (3d Cir. 1998) ("*Fotta I*"), would allow a claimant, under some circumstances, to seek interest on the delayed payment of ERISA benefits as "appropriate equitable relief" under § 502(a)(3)(B). However, the Magistrate Judge concluded that such a claim for "interest" would be one seeking "money damages," which *Great-West* has termed "the classic form of *legal* relief," *Great-West*, 534 U.S. at 210 (emphasis in original; internal quotation marks and citations omitted), that is not available as "appropriate equitable relief" under § 502(a)(3)(B).

While we agree that the Supreme Court has bridled the scope of relief available under § 502(a)(3)(B), we are convinced that, looking more specifically at the Court's requirement that the relief requested under § 502(a)(3)(B) have been "typically available in equity," Skretvedt's pursuit of interest on the wrongful or delayed withholding of his benefits is not a request for money damages, but rather a request for restitution that typically would have been available in equity. We conclude that a constructive trust is the appropriate device for such a request, and that Skretvedt may seek interest on the delayed payment of his ERISA benefits in accordance with the principles discussed in *Fotta v. Trustees of United Mine Workers of America*, 319 F.3d 612, 617-18 (3d Cir. 2003) ("*Fotta II*").

## I. Background

### A. Facts[1]

Skretvedt was employed by E.I. du Pont de Nemours and Company[2] from June 28, 1974, until February 7, 1995. In early 1994, Skretvedt was working as a Senior Research Environmental Engineer when he began receiving treatments for work-related anxiety from his family physician. Skretvedt took a leave of absence from his job on November 11, 1994, and did not return to work at DuPont thereafter. DuPont began investigating during this period whether Skretvedt would qualify for disability benefits. For reasons that the parties dispute, DuPont terminated Skretvedt on February 7, 1995.

Skretvedt filed a claim with the Equal Employment Opportunity Commission alleging that DuPont violated the Americans with Disabilities Act by discriminating against him because of his anxiety disorder. The EEOC found no violation based upon the information that Skretvedt submitted, and issued a right-to-sue letter. On September 29, 1995, acting on advice of counsel, Skretvedt signed a "Settlement Agreement and Release of All Claims" with DuPont. We previously noted that this agreement "released all of [Skretvedt's] employment-related claims against DuPont except for his application for disability benefits, which DuPont agreed to review in a 'neutral' manner." *Skretvedt I*, 268 F.3d at 171.

Following the settlement agreement, DuPont's three-member Board of Benefits and Pensions ("Benefits Board") reviewed Skretvedt's application for disability benefits, and determined that he was ineligible because, the Board claimed, he had failed to show that he was "permanently incapable of performing the duties of [his] job with the degree of efficiency required by the Company, at the time of [his] termination." *Skretvedt I*, 268 F.3d at 172. Skretvedt was also advised that, in order to succeed in appealing the Board's determination, he would have to submit "additional objective evidence that will indicate a total impairment of function," such as "MRI, X-ray reports and complete medical evaluations." *Id.* Skretvedt contended, and DuPont denied, that he and one of his doctors sent three letters to the Board's designated person for appeals, requesting clarification with respect to the types of "objective medical evidence" he would need to perfect his application on appeal in light of the fact that his claimed disability is psychological. After receiving no response, he claims, he submitted a formal appeal to the Board on May 16, 1997. Nonetheless, no further

---

[1] As this appeal raises only issues of law, we state undisputed facts that provide background for our legal determinations. A detailed statement of the facts underlying the parties' dispute can be found in *Skretvedt v. E.I. du Pont de Nemours & Co.*, 268 F.3d 167, 170-73 (3d Cir. 2001) ("*Skretvedt I*").

[2] We collectively refer to the defendant ERISA plans and Skretvedt's former employer as "DuPont."

response was received.

## B.    Procedural Background

Skretvedt filed an eight count complaint in the United States District Court for the District of Delaware on February 4, 1998.

Count I sought benefits from the "Incapability Retirement" pension program ("incapability benefits"), and alleged that DuPont's Benefits Board failed to inform Skretvedt under ERISA § 503, 29 U.S.C. § 1133, of the reasons for denying him benefits.

Count II claimed medical benefits through a DuPont benefits program known as MEDCAP and reimbursement for expenses incurred as a result of MEDCAP benefits not having been provided as of the date of his termination.

Count III asserted a right to dental benefits through a DuPont benefits program known as DAP and reimbursement for expenses incurred as a result of DAP benefits having been denied.

Count IV alleged that Skretvedt was due a $3,000 payment under a DuPont long-term life insurance plan known as the "Noncontributory Plan" as a result of his becoming disabled. Skretvedt also sought declaratory relief that would deem him eligible for participation in DuPont's "Contributory Plan" life insurance program, and sought life insurance benefits under its Noncontributory Plan.

Count V requested benefits from the "Total and Permanent Disability Income Plan" ("T&P benefits").

Count VI alleged that Skretvedt was eligible to participate in a DuPont tax-deferred savings program known as SIP, and sought damages with respect to his contributions in SIP having been paid out prematurely (in light of his having been, he alleged, wrongfully denied the right to participate in the program after his termination).

Count VII claimed that Skretvedt had been wrongfully denied further participation in a DuPont stock ownership plan known as TRASOP, and sought reinstatement of TRASOP benefits and certain damages resulting from the premature termination of his participation in the plan.

Count VIII contended that Skretvedt was improperly denied benefits under DuPont's short term disability ("STD") plan.

Among other things, Skretvedt also sought prejudgment interest, postjudgment interest, and reasonable attorney's fees with respect to each claim.

Skretvedt moved for summary judgment pursuant to Fed. R. Civ. P. 56, arguing, *inter alia*, that there was no genuine material dispute of fact as to the Benefits Board having acted in an arbitrary and capricious manner, or having abused its discretion, and that he was entitled to the award of benefits he requested.

DuPont also moved for summary judgment, arguing, *inter alia*, that there was no evidence to support a finding that

4

the Board acted in an arbitrary and capricious manner, thereby entitling them to summary judgment. On September 6, 2000, the Magistrate Judge granted summary judgment in favor of DuPont on all claims, and denied Skretvedt's motion for summary judgment. She concluded, *inter alia*, that "there is no genuine issue of material fact upon which plaintiff could be successful [in showing that the Board had acted in an arbitrary and capricious manner]" and that "a genuine issue does not exist as to the propriety of the Board's action. . . ." *Skretvedt v. E.I. du Pont de Nemours & Co.*, 119 F. Supp. 2d 444, 453-55 (D. Del. 2000).

Skretvedt appealed the grant of summary judgment in favor of DuPont and the denial of summary judgment in his favor with respect to his claims for incapability and T&P benefits only. We held that "[b]ecause the medical evidence that Skretvedt presented makes it clear that he meets the eligibility standards for incapability benefits, and the Board can point to no conflicting medical evidence, . . . the Board's decision was arbitrary and capricious because it was 'without reason' and it was 'unsupported by substantial evidence.'" *Skretvedt I*, 268 F.3d at 184. Accordingly, we reversed the Magistrate Judge's summary judgment order "in favor of DuPont and denying summary judgment in favor of Skretvedt on the claim for incapability benefits[,] . . . and . . . remanded to the District Court with directions to grant summary judgment in favor of Skretvedt on the claim for incapability benefits." *Id.* We further

"vacate[d] the District Court's order granting summary judgment on the count challenging the Board's denial of Skretvedt's application for T&P benefits and remand[ed] it to the District Court," assuming "that the District Court will direct that DuPont's [Benefits] Board consider this claim in the first instance, since even though Skretvedt is incapable of performing the duties of his previous position at DuPont, he may nevertheless be ineligible for T&P benefits." *Id.* at 185.[3]

In light of our opinion, on remand the Magistrate Judge entered a judgment on December 13, 2001, in favor of Skretvedt "on his claim for incapability benefits." DuPont granted incapability benefits on March 6, 2002, in response to that judgment. On the same day, without Skretvedt's having to resort to further judicial proceedings, DuPont granted T&P benefits upon reevaluating Skretvedt's claim in light of our opinion.[4]

---

[3] We also remanded Skretvedt's request that he be awarded attorney's fees, noting that such a request is one for the Magistrate Judge to consider using her discretion, guided by the five-factor analysis set out in *McPherson v. Employees' Pension Plan of American Re-Insurance Co.*, 33 F.3d 253, 254 (3d Cir. 1994). *See Skretvedt I*, 268 F.3d at 185 n.10.

[4] Skretvedt's incapability and T&P benefits were subsequently adjusted by DuPont in his favor on April 15, 2002, and again on April 16, 2002.

On April 1, 2002, Skretvedt submitted to the Magistrate Judge an "Opening Brief in Support of Claims for Short Term Disability Benefits, Interest on Delayed Payment of Benefits and Related Tax Reimbursement Claims (corrected)" (the "Other Claims Brief"). Although he had pursued only his claims in Counts I and V for incapability and T&P benefits in his appeal to our Court in *Skretvedt I*, and although we remanded only with respect to those claims, Skretvedt sought to raise again claims for which the Magistrate Judge had previously granted summary judgment to DuPont, as discussed above. The brief requested, *inter alia*, compensation with respect to DuPont's denial of medical benefits under Count II, compensation for his having been prematurely removed from the TRASOP plan under Count VII, and an award of STD benefits under Count VIII. The brief also sought interest on the delayed payment of all of his benefits and compensation for adverse tax consequences Skretvedt faced for having received back payments of benefits in the same tax year. The brief did not specify what action it was requesting the Magistrate Judge to take, and did not contain a formal motion, but instead in its "Conclusion" section stated: "WHEREFORE, Skretvedt presents his view of STD, interest on delayed payments and raises germane issues needing to be resolved in his favor." Other Claims Brief at 12. DuPont submitted a memorandum opposing Skretvedt's claims.

On August 21, 2002, the Magistrate Judge, referring to Skretvedt's Other Claims Brief as a "Motion for Additional Compensation," addressed the merits of each of the requests contained in the brief. The Court concluded that Skretvedt was not entitled as a matter of law to the interest, tax-related compensation, TRASOP adjustments, and adjustments to his incapability and T&P benefits that he sought. Furthermore, STD benefits, the Court held, were not available because: (1) the relevant statute of limitations had lapsed prior to Skretvedt's request for those benefits; (2) the settlement agreement Skretvedt signed with DuPont waived any claim to STD benefits; and (3) employees with work-related injuries, such as Skretvedt, were not eligible for STD under the terms of the plan.

Skretvedt filed a motion for reconsideration on September 4, 2002, and then filed a notice of appeal of the August 21, 2002, order on September 20, 2002, which was docketed at No. 02-3620. The Magistrate Judge denied the motion for reconsideration on November 12, 2002. Skretvedt filed an amended notice of appeal on November 14, 2002, seeking to appeal the August 21, 2002, and November 12, 2002, orders,[5] which was docketed at No. 02-4283. We

---

[5] Skretvedt incorrectly reported the date of the November 12, 2002, order in his amended notice of appeal as November 13, 2002. As this order reaffirms the August 21, 2002, judgment, we refer hereafter (unless the context requires otherwise) to that judgment only.

consolidated both timely appeals.[6]

## II. Jurisdiction

The Magistrate Judge had subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 1132(f) and 28 U.S.C. § 1331. Both parties assert that we have final order jurisdiction under 28 U.S.C. § 1291 to review the Magistrate Judge's order (and order on reconsideration) disposing of the relief requested in Skretvedt's Other Claims Brief.[7] "Although the parties do not

contest the issue of appellate jurisdiction, we have the duty to raise the issue *sua sponte.*" *Commonwealth. of Pa. v. Flaherty*, 983 F.2d 1267, 1275 (3d Cir. 1993). We must, accordingly, determine whether the orders were final under 28 U.S.C. § 1291.

In order to examine our current jurisdiction, we first address our Court's decision and remand order in *Skretvedt I*. Prior to that decision, the Magistrate Judge granted summary judgment on all of Skretvedt's claims in favor of DuPont in September 2000. As noted above, we issued a limited remand with respect to the claims for incapability and T&P benefits, and directed the Magistrate Judge to consider the attorney's fees issue in her discretion. The Magistrate Judge entered a judgment, pursuant to our opinion and order, that completely disposed of the incapability benefits claim.[8] DuPont

---

[6] While these appeals were pending, Skretvedt moved before the Magistrate Judge for attorney's fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g). His motion was granted, but he was awarded less than he requested. Skretvedt appealed that award, which was docketed at No. 03-2805 and has since been decided by another panel of this Court.

[7] Where, as here, the parties have consented under 28 U.S.C. § 636(c)(1) to allowing a magistrate judge to "conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case," *id.*, 28 U.S.C. § 636(c)(3) provides for an "appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court." *Id.*; *see also* Fed. R. Civ. P. 73(c). Accordingly, final order jurisdiction to review such an order arises from 28 U.S.C. § 636(c)(3) to the extent it

is final under 28 U.S.C. § 1291. *See, e.g.*, *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1209 n.1 (3d Cir. 1995).

[8] The judgment entered by the Magistrate Judge with respect to incapability benefits reads in its entirety: "Pursuant to the Order of the Third Circuit Court of Appeals dated October 5, 2001, Judgment is entered on behalf of the plaintiff on his claim for incapability benefits." Ordinarily, "[w]here the order appealed from finds liability and imposes a monetary remedy, but does not reduce that award to a specific figure, this court will usually find the order interlocutory."

*Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 98-99 (3d Cir. 1988); *see Prod. and Maint. Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1401 (7th Cir. 1992) ("A decision awarding but not quantifying damages normally is not final because it leaves a question that is not collateral to the merits to be resolved in the district court."). However, "even when a judgment fails to fix the amount of damages, if the determination of damages will be mechanical and uncontroversial, so that the issues the defendant wants to appeal before that determination is made are very unlikely to be mooted or altered by it—in legal jargon, if only a 'ministerial' task remains for the district court to perform— then immediate appeal is allowed." *Id.* at 1401.

While the Magistrate Judge did not quantify the accrued incapability benefits due to Skretvedt, DuPont applied a "mechanical" formula under the incapability plan and awarded Skretvedt back incapability benefits. Skretvedt's only issue with the application of that formula was whether he should have been credited for six additional months of company service because, in his view, he was entitled to six months of STD benefits, and his length of service with DuPont should have been extended by six months. The Magistrate Judge addressed this argument, and Skretvedt now raises it on appeal.

Accordingly, because applying the terms of the incapability benefits plan to

subsequently granted T&P benefits without Skretvedt's having to seek a judgment. Neither party, however, sought formally to dispose of the claim for T&P benefits (*e.g.*, by dismissing Count V voluntarily to the extent that it sought T&P benefits or moving for summary judgment on mootness grounds because the benefits had been paid voluntarily).

In disposing of Skretvedt's Other Claims Brief, the Magistrate Judge, as noted already, addressed on the merits Skretvedt's arguments with respect to various other benefits sought in other counts of his complaint (*e.g.*, Count VII for TRASOP benefits, Count VIII for STD benefits). This had no effect on the finality of the August 21, 2002, order, but with respect to the claim for T&P benefits that remained pending, the August 21, 2002, opinion and order did not explicitly dispose of that claim. While the order did address Skretvedt's additional request in his complaint for interest on the delayed payment of those benefits, the claim for T&P benefits itself was not directly

---

Skretvedt in calculating his award was "mechanical" and Skretvedt only disputes one aspect of that application (which was fully disposed of by the Magistrate Judge), we conclude that the Magistrate Judge's order (and order on reconsideration) "end[ed] the litigation on the merits" with respect to that claim and "le[ft] nothing for the court to do but execute the judgment." *Gerardi v. Pelullo*, 16 F.3d 1363, 1369 (3d Cir. 1994) (internal quotation marks and citations omitted).

8

addressed.

Ordinarily, in the absence of a Fed. R. Civ. P. 54(b) certification, "there is no final order if claims remain unresolved and their resolution is to occur in the district court." *Aluminum Co. of Am. v. Beazer East, Inc.*, 124 F.3d 551, 557 (3d Cir. 1997). We recognized in *Beazer East*, however, that

> to determine the effect of a district court's decision–and therefore to determine whether there is a final order–it is sometimes necessary to look beyond the pleadings. A final order is not absent just because the district court failed to adjudicate all of the claims that were at one time pleaded. Instead, an appellate court must determine whether, at the time it is examining its jurisdiction, there remain unresolved issues to be adjudicated in the district court.

*Id.* at 560.[9]

With respect to Skretvedt's claim for the underlying award of T&P benefits, he represented to the Magistrate Judge that DuPont had paid those benefits. *See* Other Claims Brief at 1 ("T&P Plan benefits recently were granted by DuPont's claims agent, Aetna."). Skretvedt did not argue that DuPont in any way failed to award T&P benefits or miscalculated the award of T&P benefits, except as noted *infra* note 14. The Magistrate Judge also recognized in her August 21, 2002, opinion that T&P benefits had been awarded. *See* Magis. Judge Op. at 2 ("[Subsequent to *Skretvedt I*,] the DuPont Board of Benefits and Pensions granted plaintiff [T&P] benefits, and [i]ncapability benefits approving a start date of February 8, 1995."). Accordingly, we determine that the claim for T&P benefits was sufficiently resolved in the August 21, 2002, opinion and order where the Magistrate Judge recognized that payment of T&P benefits was moot. That order was therefore a final order[10]

---

[9] *See also Hindes v. F.D.I.C.*, 137 F.3d 148, 156 n.3 (3d Cir. 1998) ("We have case law indicating that '[a]n order that effectively ends the litigation on the merits is an appealable final judgment even if the district court does not formally include

judgment on a claim that has been abandoned' by a party. *Lusardi v. Xerox Corp.*, 975 F.2d 964, 970 n. 9 (3d Cir.1992) (quoting *Jones v. Celotex Corp.*, 867 F.2d 1503, 1503-04 (5th Cir. 1989) (per curiam)).") (additional citation omitted).

[10] The August 21, 2002, order also met the procedural requirements of Fed. R. Civ. P. 58 for an order that begins the running of the time for appeal. *See Local Union No. 1992 of the Int'l Bhd. of Elec. Workers v. The Okonite Co.*, 358 F.3d 278, 285-86 (3d Cir. 2004) (order satisfies Rule

within the meaning of 28 U.S.C. § 1291.[11]

## III. Standard of Review

"[W]e must look to the course of the proceedings in the district court and the basis for its decision to determine the standard of review." *Blasband v. Rales*, 971 F.2d 1034, 1039 (3d Cir. 1992). The

---

58's separate document requirement where it (1) is self-contained and separate from the opinion, (2) sets forth the relief granted, and (3) omits the District Court's reasons for disposing of the parties' motions as it did).

[11] The outstanding claim for statutory attorney's fees and costs under ERISA had no effect on the finality of the Magistrate Judge's August 21, 2002, order on the merits. *See Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 137 (3d Cir. 2001) ("When an outstanding claim for attorneys' fees is by a statutory prevailing party, the unresolved issue of those fees does not prevent judgment on the merits from being final.") (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988)); *Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1090 (3d Cir. 1988) ("In [*Budinich*], the Supreme Court held that a determination of liability and damages is final despite a pending determination of costs and attorney's fees. The rationale of *Budinich* is that the determination of costs and fees following entry of judgment involves considerations distinct from the underlying merits of the action itself.").

relevant portions of the Magistrate Judge's August 21, 2002, decision on appeal address purely legal issues in the context of what is essentially a summary judgment determination. "Inasmuch as we are deciding this appeal by resolving questions of law, we are exercising *de novo* [*i.e.*, plenary] review." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 410 (3d Cir. 2003).

The motion for reconsideration in this case dealt with the Magistrate Judge's legal determinations. "The decision to deny a Motion for Reconsideration is within the discretion of the District Court, but 'if the court's denial was based upon the interpretation and application of a legal precept, review is plenary.'" *Le v. Univ. of Pa.*, 321 F.3d 403, 405-06 (3d Cir. 2003) (quoting *Koshatka v. Pa. Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir.1985)); *see McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 552-53 (3d Cir. 1992) (same).

## IV. Claims Litigated Other Than Those Remanded by *Skretvedt I*

As noted, on remand from *Skretvedt I*, Skretvedt raised various claims regarding TRASOP benefits, medical premiums, STD benefits, and other claims asserted in various counts in his complaint (the "ancillary claims"). Skretvedt now appeals from the Magistrate Judge's denial of relief on remand with respect to those claims. As discussed above, however, Skretvedt did not pursue any of these

10

claims in his prior appeal to our Court.[12]

We have held on numerous occasions that "[a]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir.1994); *see, e.g., Kopec v. Tate*, 361 F.3d 772, 775 n.5 (3d Cir. 2004); *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 225 n.6 (3d Cir. 2002). Although he did not

---

[12] Skretvedt's opening brief from *Skretvedt I* at one point averred generally that he sought "to secure employee benefits under related plans of the DuPont company" after referencing incapability benefits. Appellant's *Skretvedt I* Opening Brief at 3. Skretvedt additionally indicated that he sought the "status of [a] retiree under the "[incapability benefits] pension plan and related plans." *Id.* Of course, "where important and complex issues of law are presented, a . . . detailed exposition of argument [in a party's appellate brief] is required to preserve an issue." *Frank v. Colt Indus., Inc.*, 910 F.2d 90, 100 (3d Cir. 1990). Skretvedt's brief did not address the merits of his claims with respect to these "related plans" and was clear in its conclusion section as to the only relief he sought on appeal. There Skretvedt "request[ed] the Court [to] reverse the Order . . . granting Defendants summary judgment and enter summary judgment for the Appellant with an order to the District Court to grant him his *Incap* and *T&P benefits*." *Id.* at 32 (emphasis added).

challenge the Magistrate Judge's grant of summary judgment in favor of DuPont with respect to these ancillary claims in his first appeal to our Court and thus clearly waived any arguments in favor of reversal with respect to those claims, having achieved success on the issues he did appeal in *Skretvedt I*, Skretvedt now seeks to litigate those abandoned ancillary claims.

We have consistently rejected such attempts to litigate on remand issues that were not raised in a party's prior appeal and that were not explicitly or implicitly remanded for further proceedings. "An issue that is not addressed in an appellant's brief is deemed waived on appeal. Appellants' alternative theor[ies] of recovery [were] not before this court in the earlier appeal; *a fortiori*, [they] could not be remanded to the district court. Consequently, we cannot consider [them] here [on appeal from the District Court's proceedings on remand]." *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 88 (3d Cir. 1987) (citations omitted); *see also Frank v. Colt Indus., Inc.*, 910 F.2d 90, 100 (3d Cir. 1990) (party "waived . . . argument by its failure to present it in the proceedings prior to this appeal," including proceedings "when the case was before us on the previous appeal").

As we explained in *Cowgill v. Raymark Industries, Inc.*, 832 F.2d 798 (3d Cir. 1987),

> [a]dherence to the rule that a party waives a "contention that could have been but

11

was not raised on a prior appeal," *Munoz v. County of Imperial*, 667 F.2d 811, 817 (9th Cir.), *cert. denied*, 459 U.S. 825, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982), is, of course, necessary to the orderly conduct of litigation. Failure to follow this rule would lead to the bizarre result, as stated admirably by Judge Friendly, "that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). . . .

*Id.* at 802 n.2 (quoting *Laffey v. Northwest Airlines, Inc.*, 740 F.2d 1071, 1089-90 (D.C. Cir. 1984)) (alterations omitted).[13]

---

[13] Our decision in *Cowgill* rested primarily on collateral estoppel, which we described as, at least in this context, incorporating the same underlying principle as the so-called "mandate rule." Under the mandate rule, a species of the law of the case doctrine, "a trial court must comply strictly with the mandate directed to it by the reviewing court." *Ratay v. Lincoln Nat. Life Ins. Co.*, 405 F.2d 286, 288 (3d Cir. 1968). Nonetheless, "[a] district court may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision." *In re Chambers Dev. Co., Inc.*, 148 F.3d 214, 225 (3d Cir. 1998) (internal quotation marks omitted); *see also, e.g.*, *Casey v. Planned Parenthood of Southeastern Pa.*, 14 F.3d 848, 857 (3d Cir. 1994).

As we explained in *Cowgill*: When a court of appeals reverses a judgment and remands for further consideration of a particular issue, leaving other determinations of the trial court intact, the unreversed determinations of the trial court normally continue to work an estoppel. 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 30.416[2], p. 517 (3d ed. 1984). When the estoppel is operative in proceedings in the same case on remand, courts frequently speak in terms of the law of the mandate or the law of the case rather than collateral estoppel but the underlying principle is the same. *Todd & Co., Inc. v. S.E.C.*, 637 F.2d 154 (3d Cir.1980) (when an appellate court affirms in

Accordingly, we shall not now consider arguments with respect to the ancillary claims Skretvedt waived in his prior appeal. "The judicial system's interest in finality and in efficient administration dictates that, absent extraordinary circumstances, litigants should not be permitted to relitigate issues that they have already had a fair opportunity to contest." *Cowgill*, 832 F.2d at 802 (quoting *Todd & Co., Inc. v. S.E.C.*, 637 F.2d 154, 156 (3d Cir.1980)) (internal quotation marks omitted). Our limited remand in *Skretvedt I* granted nearly all of the relief requested. We will not now, in this second appeal, given the absence of a showing of any extraordinary

> part and reverses in part, all issues necessarily disposed of in the affirmance become law of the case even though the case is remanded for proceedings on other issues).

*Cowgill*, 832 F.2d at 802.

In light of Skretvedt's clear waiver of the ancillary claims, we need not rely on the mandate rule or law of the case in reaching our determination. Skretvedt had a full and fair opportunity to litigate the ancillary claims in his prior appeal, and did not do so. Thus we see no basis under the facts of this case for applying any of the exceptions to the law of the case doctrine. *See In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998) (discussing exceptions to the law of the case doctrine).

circumstances, address claims that Skretvedt previously abandoned.[14] Accordingly, we dismiss the portion of Skretvedt's current appeal addressing claims asserted in his complaint other than Counts I and V for incapability and T&P benefits, respectively, and address herein only relief requested with respect to those counts.[15]

---

[14] With respect to STD benefits, we will not now consider, for example, whether Skretvedt is entitled to those benefits and the effect of any award of them on the calculation of his incapability and T&P benefits.

[15] Skretvedt has requested additionally that damages ("tax compensation") be awarded with respect to the increased tax liability he incurred because his accrued ERISA benefits were paid in a single tax year. Had DuPont properly approved his benefits claim when it was submitted, he suggests, his tax liability would have been lower because benefit payments would have been made monthly and he would not have received one large payment of accrued benefits in a single tax year. Skretvedt argues that the Magistrate Judge failed to apply *Gelof v. Papineau*, 829 F.2d 452, 455 n.2 (3d Cir. 1987), a case under the Age Discrimination in Employment Act. Putting aside that *Gelof* is not an ERISA case, it also did "not address . . . whether such an award should be made in all back pay cases" because of the defendant's "concession that the judgment should properly include the negative tax impact of a lump sum payment as an

element of damages. . . ." *Id.*

Skretvedt additionally suggests that he would be entitled to tax compensation as a matter of "contract," but he has not identified any term in any of his ERISA plans that would provide for such a remedy. He does argue, however, that tax compensation is due him as a matter of restitution, presumably under ERISA § 502(a)(3)(B). As the Court of Appeals for the First Circuit has suggested under analogous facts, "[t]his argument is highly dubious; the tax payments at issue would seem to be completely distinct from any ill-gotten profits which might properly be made subject to a viable restitution claim." *Armstrong v. Jefferson Smurfit Corp.*, 30 F.3d 11, 13 n.5 (1st Cir. 1994).

Skretvedt's claim for tax compensation would seem to be no more than an ordinary claim for money damages as compensation for losses suffered. *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993), makes clear that such claims for money damages are not permissible under § 502(a)(3)(B) because they are "the classic form of legal relief" and are therefore not within the scope of "appropriate equitable relief" allowed under § 502(a)(3)(B). Accordingly, we see no basis for such a claim to be brought under § 502(a)(3)(B). *See Farr v. U.S. West Communications, Inc.*, 151 F.3d 908, 916 (9th Cir. 1998) (citing *Mertens* and holding that "binding precedent compels us to conclude that Plaintiffs may not recover their tax benefit losses under

## V. Interest on the Delayed Payment of Benefits

Skretvedt's Other Claims Brief sought, *inter alia*, interest on the delayed payment of incapability and T&P benefits under Counts I and V, respectively.[16] The Magistrate Judge analyzed Skretvedt's request for interest with respect to both forms of benefits under our decision in *Fotta I*, which held that a claimant whose ERISA benefits were delayed but ultimately paid voluntarily (without a court judgment having been entered) could, under some circumstances, assert a cause

---

§ 502(a)(3)"); *Armstrong*, 30 F.3d at 13 (*Mertens* "compels the conclusion that plaintiffs are precluded from recovering damages for the federal and state tax liabilities they incurred on . . . lump sum payments"); *see also Harsch v. Eisenberg*, 956 F.2d 651, 661 (7th Cir. 1992).

[16] We do not read our mandate in *Skretvedt I* as having precluded Skretvedt from seeking interest with respect to the claims for incapability and T&P benefits that were on limited remand. The Magistrate Judge clearly had authority to conduct further proceedings with respect to interest on those remanded claims, as that "issue[] [was] not expressly or implicitly disposed of by the appellate decision." *In re Chambers Dev. Co., Inc.*, 148 F.3d at 225 (internal quotation marks omitted).

14

of action under ERISA § 502(a)(3)(B)[17] for interest on that delayed payment as a form of "appropriate equitable relief." *Fotta I*, 165 F.3d at 214. The Magistrate Judge concluded that "[a]lthough *Fotta* [*I*] may support [a claim for interest], this court cannot apply *Fotta* [*I*] in light of . . . [*Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002)]." Magistrate Judge Op. at 9. Simply put, the Magistrate Judge concluded that *Fotta I* had been implicitly overruled by *Great-West*. We enter this thicket as a matter of first impression for our Court.

We conclude first that *Great-West* does not apply to Skretvedt's claim for prejudgment interest with respect to incapability benefits awarded pursuant to a court judgment under ERISA § 502(a)(1)(B). We then address separately Skretvedt's claims for interest with respect to T&P benefits, which his employer voluntarily paid after several years of litigation, and conclude that *Great-West* does not preclude a claim under ERISA § 502(a)(3)(B) for restitution by way of a constructive trust with respect

---

[17] Section 502(a)(3)(B) provides: A civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

*Id.*

to interest earned on withheld benefits.

## A. Prejudgment Interest on a Judgment Procured Pursuant to § 502(a)(1)(B)

Skretvedt was awarded incapability benefits pursuant to ERISA § 502(a)(1)(B) by way of a court judgment. This provision states:

> A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . .

*Id.* Skretvedt's request for interest with respect to ERISA benefits he was awarded pursuant to a judgment under § 502(a)(1)(B) is no more than an ordinary request for prejudgment interest on a judgment obtained pursuant to a federal statute. Our Court in *Anthuis v. Colt Industries Operating Corp.*, 971 F.2d 999 (3d Cir. 1992), applied to the ERISA context the long-standing rule that, in the absence of an explicit statutory command otherwise, district courts have broad discretion to award prejudgment interest on a judgment obtained pursuant to a federal statute.

> While it is true that Congress did not mandate prejudgment interest

payments for other than delinquent contributions, we have held generally that "[i]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal law is committed to the trial court's broad discretion." *Ambromovage v. United Mine Workers*, 726 F.2d 972, 981-82 (3d Cir. 1984). *Ambromovage cited Board of Commissioners of Jackson County, Kansas v. United States*, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939), in which the general federal rule was announced that prejudgment interest is to be "given in response to considerations of fairness [and] denied when its exaction would be inequitable."

*Id.* at 1009 (alterations in original); *see also Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried, Nonunion Employees*, 960 F.2d 1187, 1190, 1192 n.4 (3d Cir. 1992) (where a judgment has been entered in favor of a prevailing ERISA plaintiff, "[i]t is undisputed that prejudgment interest typically is granted to make a plaintiff whole because the defendant may wrongly benefit from use of plaintiff's money," subject to the District Court's applying "the appropriate standards in granting prejudgment interest").

*Anthuis* relied in part on the Supreme Court's determination in *Board of Commissioners of Jackson County, Kansas v. United States*, 308 U.S. 343, 352 (1939), that, where "[t]he issue is uncontrolled by any formal expression of the will of Congress," *id.* at 349, "interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable." *Id.* at 352. The Supreme Court later explained in *Rodgers v. United States*, 332 U.S. 371, 373 (1947), that

> the failure to mention interest in statutes which create obligations has not been interpreted by this Court as manifesting an unequivocal congressional purpose that the obligation shall not bear interest. *Billings v. United States*, 232 U.S. 261, 284-288, 34 S.Ct. 421, 425-427, 58 L.Ed. 596 [(1914)]. For in the absence of an unequivocal prohibition of interest on such obligations, this Court has fashioned rules which granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the

light of general principles deemed relevant by the Court. *See, e.g., Royal Indemnity Co. v. United States*, [313 U.S. 289, 295-97, 61 S.Ct. 995, 997, 998, 85 L.Ed. 1361 (1941)]; *Board of Com'rs of Jackson County in State of Kansas v. United States*, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 [(1939)].

*Id.*

Applying *Board of Commissioners* or *Rodgers*, we have in the past determined that prejudgment interest is available with respect to judgments obtained pursuant to several statutes that are silent as to its exaction.[18] Moreover, in *Anthuis*, we applied *Board of Commissioners* in determining that a successful ERISA plaintiff could obtain prejudgment interest as part of his or her award of delayed ERISA benefits.[19]

*Rodgers* in determining that a "back pay award under the Fair Labor Standards Act should be presumed to carry . . . pre-judgment interest unless the equities in a particular case require otherwise"); *Ambromovage v. United Mine Workers of Aa.*, 726 F.2d 972, 982 n.27 (3d Cir. 1984) (applying *Board of Commissioners* and *Rodgers* and determining that "[t]he purposes of the provisions of the Taft-Hartley Act under which this lawsuit proceeded is the protection of pension beneficiaries and union members. It would not be inconsistent with these purposes to award aggrieved members of those protected classes interest on lost income.").

---

[18] *See, e.g., Gov't of V. I. v. Davis*, 43 F.3d 41, 47 (3d Cir. 1994) (citing *Rodgers* and holding that prejudgment interest "is an aspect of the victim's actual loss which must be accounted for in the calculation of restitution in order to effect full compensation" under the Victim and Witness Protection Act); *Poleto v. Consol. Rail Corp.*, 826 F.2d 1270, 1274-79 (3d Cir. 1987) (applying *Rodgers* and, where Congress was silent, "look[ing] to the purposes behind [the] statute as a general indication of Congressional purpose," in determining the availability of prejudgment interest under the Federal Employers' Liability Act); *Brock v. Richardson*, 812 F.2d 121, 126-27 (3d Cir. 1987) (citing *Board of Commissioners* and

[19] *Anthuis* and *Schake* are by no means alone in concluding that a successful ERISA plaintiff may be entitled to prejudgment interest as part of his or her benefits award. *See, e.g., Cottrill v. Sparrow, Johnson & Ursillo, Inc., et al.*, 100 F.3d 220, 223 (1st Cir. 1996) ("district court may grant prejudgment interest in its discretion to prevailing fiduciaries, beneficiaries, or plan participants" in ERISA cases); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030 (4th Cir. 1993) ("ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with

Although we wrote in the context of benefits having been awarded pursuant to § 502(a)(1)(B), we did not make explicit in

the trial court.") (*en banc*); *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 984 n.11 (5th Cir. 1991) ("[T]o determine whether an award of prejudgment interest is appropriate, the court must determine whether such an award is precluded by the federal statute that gives rise to the cause of action, and if such an award is not precluded, whether it would further the congressional policies embodied in the act. ERISA does not preclude an award of prejudgment interest. Furthermore, . . . we have no doubt[] that an award of prejudgment interest under ERISA furthers the purposes of that statute by encouraging plan providers to settle disputes quickly and fairly, thereby avoiding the expense and difficulty of federal litigation.") (internal citation omitted); *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 989 (6th Cir. 1982) ("The general rule is that in the absence of a statutory provision the award of prejudgment interest is in the discretion of the court."); *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001) (allowing for prejudgment interest on an ERISA award); *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1484 (11th Cir. 1995) ("The award of an amount of prejudgment interest in an ERISA case is a matter committed to the sound discretion of the trial court.") (internal quotation marks omitted).

*Anthuis* the statutory provision of ERISA under which a plaintiff could obtain prejudgment interest as part of her or his benefits award. But we did not suggest that it would be necessary for a prevailing plaintiff to pursue such a claim as "other appropriate equitable relief" under § 502(a)(3)(B).[20] We now make explicit

[20] We recognize that the panel in *Fotta II*, in a case where there had been no underlying judgment representing an award of benefits under § 502(a)(1)(B), construed *Anthuis* as allowing for an award of prejudgment interest under § 502(a)(3)(B).

> *Fotta I* . . . determined who has a cause of action under § 502(a)(3)(B). Before *Fotta I*, only an ERISA beneficiary who had brought a legal action to recover wrongfully withheld benefits could sue for interest under [§ 502(a)(3)(B)]. *See, e.g.*, *Anthuis*, 971 F.2d at 1010.

*Fotta II*, 319 F.3d at 617. But as noted, *Anthuis* itself made no mention of a successful ERISA plaintiff who received benefits under § 502(a)(1)(B) having to "sue for interest" under § 503(a)(3)(B). Instead, it indicated that "in the district court's discretion, prejudgment interest may be *awarded* for a denial of pension benefits." *Anthuis*, 971 F.2d at 1010 (emphasis added). Accordingly, a district court under *Anthuis* could allow for prejudgment interest as part of the benefits

18

that, in accordance with *Board of Commissioners* and *Rodgers*, an ERISA plaintiff who prevails under § 502(a)(1)(B) in seeking an award of benefits may request prejudgment interest under that section as part of his or her benefits award.

Accordingly, the Supreme Court's decision in *Great-West*, interpreting the extent of "appropriate equitable relief" available under ERISA § 502(a)(3)(B), does not apply to the availability of prejudgment interest on a benefits award obtained under § 502(a)(1)(B). We therefore reverse the Magistrate Judge's denial of prejudgment interest with respect to the delayed payment of Skretvedt's incapability benefits so that the Court may exercise its discretion in the first instance in determining whether prejudgment interest is appropriate. Under *Anthuis*,

> [a]s a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief

granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due. Awarding prejudgment interest is intended to serve at least two purposes: to compensate prevailing parties for the true costs of money damages incurred, and, where liability and the amount of damages are fairly certain, to promote settlement and deter attempts to benefit from the inherent delays of litigation. Thus prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable.

*Anthuis*, 971 F.2d at 1010 (quoting *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 745, 752 (8th Cir. 1986) (internal citations omitted)).

We recognize that we have "not . . . offer[ed] extensive guidance for deciding what rate of interest is appropriate in a given case." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 131-32 (3d Cir. 2000). Instead, we reiterate that "the awarding of prejudgment interest under federal law is committed to the trial court's broad discretion." *Ambromovage*, 726 F.2d at 981-82; *see also Sun Ship, Inc.*

award for an ERISA plaintiff who is successful under § 502(a)(1)(B). To the extent that *Fotta II* discusses a successful ERISA plaintiff needing to use § 502(a)(3)(B) to "sue for interest," in the context of deciding whether a plaintiff who had *not* received an underlying award of benefits under § 502(a)(1)(B) could still sue for interest on the delayed payment of benefits under § 502(a)(3)(B), such statements are *dicta*.

*v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986) ("In federal question cases, the rate of prejudgment interest is committed to the discretion of the district court.").

**B.     Interest on the Delayed Payment of Benefits Under § 502(a)(3)(B)**

In *Fotta I*, we faced a novel question: can "a beneficiary who has been able to receive his or her benefits due under an ERISA plan only after considerable delay, but without resorting to litigation to recover that payment[, assert] a cause of action under ERISA." *Fotta I*, 165 F.3d at 211. While *Anthuis* and *Schake* allowed for prejudgment interest as part of an underlying judgment awarding benefits under § 502(a)(1)(B), *Fotta I* required us to determine whether ERISA would support a separate cause of action allowing for an award of interest[21] on the delayed payment of benefits. Appellants in *Fotta I* conceded that prejudgment interest is available where there is an underlying § 502(a)(1)(B) claim, but argued that ERISA does not allow for an independent cause of action to be brought seeking interest alone where there has been no underlying award of

benefits under § 502(a)(1)(B). Our Court disagreed.

> We believe the distinction is unpersuasive. The principles justifying prejudgment interest also justify an award of interest where benefits are delayed but paid without the beneficiary's having obtained a judgment. The concerns animating our decisions in *Schake* and *Anthuis—viz.*, making the claimant whole and preventing unjust enrichment—are not diminished merely because the plan has paid the overdue benefits without the claimant having resorted to litigation to secure payment. A late payment of benefits effectively deprives the beneficiary of the time value of his or her money whether or not the beneficiary secured the overdue benefits through a judgment as the result of ERISA litigation.
>
> Unjust enrichment principles also apply with equal force in this setting. To hold that the absence of a judgment deprives the injured beneficiary of the time value of his or her money would create a financial incentive for plans to delay payment and thus

---

[21]     We refer to "interest" and not "prejudgment interest" with respect to the cause of action discussed in *Fotta I*, as a plaintiff seeking to recover interest on the delayed payment of benefits where there is no underlying court judgment does not seek "prejudgment" interest, but merely "interest."

retain interest that rightfully belongs to the beneficiary.

*Fotta I*, 165 F.3d at 212. At base, *Fotta I* concluded, there is no persuasive distinction between justifying prejudgment interest where a judgment for unpaid benefits has been obtained and justifying an award of interest where benefits are delayed but paid without the claimant having received a judgment.

The facts of this case demonstrate the wisdom of that conclusion. Skretvedt first applied for benefits in 1995. He was awarded incapability benefits by way of a court judgment entered on remand from our decision in *Skretvedt I*, thereby allowing him to request that the Court exercise its discretion to award him prejudgment interest. While no judgment was entered with respect to Skretvedt's T&P benefits, as our Court requested that DuPont reconsider the denial of those benefits in light of our opinion in *Skretvedt I*, DuPont voluntarily awarded Skretvedt those benefits shortly after *Skretvedt I*. *Fotta I* wisely noted that making the claimant whole and unjust enrichment are concerns equally present with respect to both of these scenarios (*i.e.*, where benefits have been awarded pursuant to a judgment and where benefits have been withheld but are ultimately awarded without resort to a judgment).[22]

While not ruling out that § 502(a)(1)(B) might "provide[] a possible statutory basis" for a claimant to bring a suit seeking interest on the delayed payment of benefits, *id.* at 213-14 n.1, *Fotta I* concluded that "that section 502(a)(3)(B) of ERISA—allowing a beneficiary to sue for 'other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan'—is the appropriate vehicle for such a cause of action." *Id.* at 213. An award of interest on the delayed payment of benefits under § 502(a)(3)(B) "ensures full compensation [and] serves to prevent unjust enrichment." *Id.* We held that such a claim under § 502(a)(3)(B) was one cast in "[r]estitution–the traditional remedy for unjust enrichment," which "is widely, if not universally, regarded as a tool of equity." *Id.* Therefore, a claimant could seek interest on the delayed voluntary payment of benefits as a form of restitution authorized by § 502(a)(3)(B), allowing for "other appropriate equitable relief."[23]

---

voluntarily by DuPont in the late stages of this litigation.

[23] Other circuit courts have since similarly held that a cause of action may be maintained for interest on the delayed payment of benefits as "appropriate equitable relief" under § 502(a)(3)(B). *See Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 229 (2d Cir. 2002) ("Where interest is sought to make the plaintiff whole by eliminating the effect of a defendant's breach of a fiduciary duty, we see no reason why such interest should not be

---

[22] Indeed, this case presents an even more compelling example than *Fotta I*, as Skretvedt did have to resort to litigation and was only paid T&P benefits

### 1. *Great-West* and Equitable Versus Legal Restitution

In *Great-West* the Supreme Court reiterated its earlier holding in *Mertens v.*

---

deemed 'appropriate equitable relief' within the scope of § 502(a)(3)(B)."); *see also Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 946 (8th Cir. 1999) (§ 502(a)(3) supports a claim for interest on the delayed payment of benefits to prevent unjust enrichment where "the wrongdoer . . . use[d] the withheld benefits or retain[ed] interest earned on the funds during the time of the dispute"). The Court of Appeals for the Seventh Circuit has specifically suggested that such restitutionary relief is available through a constructive trust. *See Clair v. Harris Trust and Savings Bank*, 190 F.3d 495, 498-99 (7th Cir. 1999) ("[P]laintiffs are asking . . . that the court impress a constructive trust on the interest that the defendants earned on benefits withheld in violation of the terms of the plan. A constructive trust . . . is an equitable remedy commonly sought and granted in cases of unjust enrichment. . . . If A wrongfully appropriates money or other property belonging to B, the court can order A to hold the property in trust for B. That is the nature of the relief sought by the plaintiffs in this case [and] *Health Cost Controls* [*v. Washington*, 187 F.3d 703, 710 (7th Cir. 1999)] holds that such relief is squarely within the scope of section 502(a)(3)(B).").

*Hewitt Associates*, 508 U.S. 248 (1993), that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were typically available in equity.'" *Great-West*, 534 U.S. at 210 (quoting *Mertens*, 508 U.S. at 256). The Court then clarified that restitution, a remedy *Fotta I* generally regarded as equitable and therefore within the scope of relief available under § 502(a)(3)(B), in fact exists in two forms: legal restitution and equitable restitution. Only the latter form of restitution, the Supreme Court held, is available under § 502(a)(3)(B). *Id.* at 212-13 ("[N]ot all relief falling under the rubric of restitution is available in equity. . . . [R]estitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case, and whether it is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought.") (internal quotation marks and alterations omitted).

This distinction between legal restitution and equitable restitution turns on the following:

> In cases in which the plaintiff "could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution *at law* through an action derived

22

from the common-law writ of assumpsit. 1 [Dan B. Dobbs, *Law of Remedies: Damages–Equity–Restitution*] § 4.2(1), at 571 [(2d ed. 1993)]. . . . In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Restatement of Restitution § 160, Comment *a*, pp. 641-642 (1936).

* * *

In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. *See* 1 Dobbs § 4.3(1), at 587-588; Restatement of Restitution, *supra*, § 160, Comment *a*, at 641-642; 1 G. Palmer, *Law of Restitution* § 1.4, p. 17; § 3.7, p. 262 (1978). A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been so dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Restatement of Restitution, *supra*, § 215, Comment *a*, at 867. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Great-West*, 534 U.S. at 213-14 (emphasis and last three alterations in original). Put simply, "equitable relief" under § 502(a)(3)(B) is to be construed by reference to the types of relief typically available in equity, and courts are to analyze the underlying nature of the claim and relief requested by a plaintiff in order to determine whether that relief had been typically available in equity.

Restitution in equity was "ordinarily in the form of a constructive trust or an equitable lien, where money or

property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213 (citing 1 Dan B. Dobbs, *Law of Remedies: Damages–Equity–Restitution* § 4.3(1), at 587-88 (2d ed. 1993) ("Dobbs"); Restatement of Restitution § 160 cmt. a, at 641-42 (1936); George E. Palmer, *Law of Restitution* § 1.4, at 17 (1978) ("Palmer"); *id.* § 3.7, at 262).[24]

Without examining the specific forms of equitable restitution addressed in *Great-West*, the Magistrate Judge in this case concluded that "the [Supreme] Court clearly indicated [in *Great-West*] that claims for monetary damages, for the most part, will be claims for legal relief. Here, Skretvedt seeks money to compensate for the lost interest caused by DuPont's delayed payment. Thus, the *Great-West* decision compels this court to find that

Skretvedt seeks legal relief." Magis. Judge Op. at 9. The Magistrate Judge perceived in *Great-West* a *per se* pronouncement that where a plaintiff seeks an award that ultimately involves money (regardless whether that award consists of a constructive trust over funds that "belong in good conscience to the plaintiff" and can "clearly be traced to particular funds in the defendant's possession"), such an award is a claim for legal relief and is not available under § 502(a)(3)(B).[25]

Our reading, however, is that *Great-West* did not adopt such a rule. Instead, the Supreme Court indicated that, to determine whether a specific form of underlying relief requested is available under § 502(a)(3)(B), we must consider whether that relief was typically available at law or in equity and, in the case of restitutionary relief, whether the relief requested was in fact a form of equitable restitution.

### 2. Reexamining a Restitutionary Award of Interest Under § 502(a)(3)(B)

Analyzing the propriety of an

---

[24] The Court also noted that an additional form of equitable restitution, an accounting for profits, is outside the general rule that an action sounding in equitable restitution must not seek to impose personal liability on the defendant. "If, for example, a plaintiff is entitled to a constructive trust on particular property held by the defendant, he may also recover profits produced by the defendant's use of that property, even if he cannot identify a particular res containing the profits sought to be recovered. *See* 1 Dobbs § 4.3(1), at 588; *id.*, § 4.3(5), at 608." *Great-West*, 534 U.S. at 214 n.2. We address this form of restitution *infra* note 26.

---

[25] Without deciding the issue, the Court of Appeals for the Eleventh Circuit has also suggested that *Great-West* "raises the question whether § 502(a)(3) ever allows an award of interest for delayed benefits or whether such a claim is an impermissible attempt to dress an essentially legal claim in the language of equity." *Flint v. ABB, Inc.*, 337 F.3d 1326, 1331 (11th Cir. 2003).

interest award under § 502(a)(3)(B) again in light of *Great-West*, we start with whether a claim for interest on the late payment of funds would generally be one at law or one in equity. It is clear that a claim for interest alone (*i.e.*, where the underlying obligation had already been paid) on a late payment (*e.g.*, an overdue loan) was traditionally not permitted at law. *See Stuart v. Barnes*, 153 U.S. 456, 462 (1894) (in an action for assumpsit, "[w]hen he who has [the] right [to compel payment] commences an action for its enforcement, he at the same time acquires a subordinate right, incident to the relief which he may obtain, to demand and receive interest. If, however, the principal sum has been paid, so that, as to it, an action brought cannot be maintained, the opportunity to acquire a right to damages is lost."). However, an independent claim for interest on wrongfully withheld funds (where the underlying funds themselves are no longer in dispute), as *Fotta I* explains, would be cognizable under a restitutionary theory. *See* Restatement of Restitution § 190, at 780 ("Where a person in a fiduciary relation to another acquires property, and the acquisition or retention of the property is in violation of his duty as fiduciary, he holds it upon a constructive trust for the other.").

Given the Supreme Court's determination in *Great-West* that only equitable restitution is available under § 502(a)(3)(B), we now determine whether a claim for interest on wrongfully withheld ERISA funds is equitable, as opposed to legal, restitution. In making this determination, *Great-West* indicated that courts should "consult[], as we have done, standard current works such as Dobbs, Palmer, Corbin, and the Restatements, which make the answers clear." *Great-West*, 534 U.S. at 217. Accordingly, we inquire whether Skretvedt may seek interest on the delayed payment of his T&P benefits through equitable restitution–by way of a constructive trust, equitable lien, or accounting for profits–the three forms of restitution that the Court determined are equitable.

Because a constructive trust may be placed over "interest" actually earned by a plan that has wrongfully delayed paying benefits, we examine only the constructive trust remedy.[26]

---

[26] In a well-reasoned opinion, the District Court in *Dobson v. Hartford Financial Services, et al.*, 196 F. Supp. 2d 152, 169-73 (D. Conn. 2002), determined that both a constructive trust and/or accounting for profits would allow for the disgorging of a fiduciary's ill-gotten gain obtained by wrongfully withholding disability benefits in violation of ERISA. The Court of Appeals for the Eighth Circuit very recently has determined that an award of interest is still permissible after *Great-West* using the accounting for profits remedy. *See Parke v. First Reliance Standard Life Ins. Co.*, ___ F.3d ___, 2004 WL 1144787, at *3-*7 (8th Cir. 2004) ("an award of interest on wrongfully delayed benefits remains permissible under [§ 502](a)(3)(B) after [*Great-West* through an accounting for profits] as a remedy for

a breach of a fiduciary duty to a beneficiary"); *see also Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 134-35 (S.D.N.Y. 2003) ("*Great-West* has no bearing on [an action for interest on the delayed payment of benefits under § 502(a)(3)] because the relief [plaintiff] seeks–an accounting of [the fiduciary's] profits made on withheld disability benefits–is a form of relief 'typically available in equity'. . . .").

With respect to the accounting for profits remedy, however, the Supreme Court in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), cautioned that

> [t]he necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them. In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases

According to Dobbs, a constructive trust can be imposed "upon any identifiable kind of property or entitlement in the defendant's hands if, in equity and conscience, it belongs to the plaintiff." Dobbs § 4.3(2), at 589-90. A constructive trust is "only used when the defendant has a legally recognized right in a particular asset [, which] may even be a fund of money like a bank account." *Id.* at 591. The constructive trust has what Dobbs calls the "important characteristic" of allowing a plaintiff to "obtain, not merely what he lost, but gains received by the defendant from the property's increase in value, from its transfer, from its use in a business operation." *Id.* at 592.

Dobbs is consistent with the Restatement of Restitution, which suggests that a constructive trust arises "[w]here a person holding title to property is subject

> where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met.

*Id.* at 478 (footnotes omitted). *Dairy Queen* appears to cast some doubt on the purely equitable nature of the accounting for profits remedy. We proceed with the constructive trust remedy because it is clear that this remedy would have been typically available in equity.

to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. . . ." Restatement of Restitution § 160, at 640-41; *see also* Palmer § 1.3, at 12 ("In the cases as a whole, constructive trust is accepted as a technique to be used in working out solutions to problems of unjust enrichment. . . ."). Generally, a constructive trust is imposed "to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant. . . ." Restatement of Restitution § 160, cmt. d, at 643. Even where the

> plaintiff . . . has not suffered a loss or . . . has not suffered a loss as great as the benefit received by the defendant[,] . . . the defendant is compelled to surrender the benefit on the ground that he would be unjustly enriched if he were permitted to retain it, even though that enrichment is not at the expense or wholly at the expense of the plaintiff. Thus, if the defendant has made a profit through the violation of a duty to the plaintiff to whom he is in a fiduciary relation, he can be compelled to surrender the profit to the plaintiff, although the profit was not made at the expense of the

plaintiff. . . .

*Id.* at 643-44. Dobbs, Palmer, and the Restatement all make clear that the constructive trust remedy typically would allow Skretvedt, in equity, to force DuPont to disgorge the gain it received on his withheld benefits under a restitutionary theory.

### 3. Specific Funds Traceable to an ERISA Plan

We must still determine, however, whether the restitution Skretvedt seeks is with respect to "money or property identified as belonging in good conscience to the plaintiff [that can] clearly be traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 204; *see also* Palmer § 3.7, at 262 (in "most of the restitution cases the equitable relief sought by the plaintiff is with respect to specific property, usually to obtain either specific restitution or a lien on the property").

DuPont, seizing on this aspect of *Great-West*, argues that Skretvedt seeks to make it and the defendant ERISA plans "personally liable" for "interest" on the delayed payment of his ERISA benefits in violation of *Great-West*. We disagree. Skretvedt's cause of action under § 502(a)(3)(B) is against the relevant ERISA plans whereby he seeks restitution by way of a constructive trust over the actual funds wrongfully earned by those

27

plans.[27]

In explaining the degree to which a plaintiff must identify money or property that is "clearly . . . trace[able] to particular funds or property in the defendant's possession," *Great-West*, 534 U.S. at 213, the Supreme Court looked to *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000). There, an ERISA pension plan fiduciary purchased interests in several motel properties for $21 million from a non-fiduciary party in interest (the "transferee" of the plan's assets). The transaction, the Court assumed, was prohibited by statute. The Court allowed an action under § 502(a)(3)(B) against the transferee "for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom," *id.* at 250, where the transferee "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Id.* at 251.

In our case, we need not even look to a third-party transferee to find the funds Skretvedt alleges belong to him. Instead, we need look no further than the ERISA plans that withheld Skretvedt's benefits for several years and profited with respect to the withholding of those benefits. As did the fiduciaries in *Harris Trust*, Skretvedt has sufficiently identified specific funds traceable to the defendant ERISA plans that belong in good conscience to him.[28]

### 4.    Proceedings on Remand

In this context, we reverse the Magistrate Judge's determination that as a matter of law Skretvedt cannot seek interest on the delayed payment of his T&P benefits under § 502(a)(3)(B). We remand to the Magistrate Judge Skretvedt's claim for interest with respect to the delayed payment of T&P benefits for that Court to determine in the first instance whether, under *Fotta II*, "those

---

[27] As a record has not been developed as to whether Skretvedt's ERISA plans have, in fact, profited with respect to the withholding of Skretvedt's benefits during the relevant time period, or whether those plans have retained funds from that period (as opposed to having, at least hypothetically speaking, transferred their funds to a third party), we express no opinion as to the entit(ies) that would properly be the subject of a judgment entered pursuant to § 502(a)(3)(B).

[28] Indeed, as several circuit courts have noted, the Senate Finance Committee, in its report on ERISA, specifically contemplated that "appropriate equitable relief" under § 502(a)(3)(B) would include, "[f]or example, . . . a constructive trust [to] be imposed on the plan assets. . . ." S. Rep. No. 93-383, *reprinted in* 1974 U.S.C.C.A.N. 4890, 4989; *see Harsch v. Eisenberg*, 956 F.2d 651, 656 (7th Cir. 1992) (quoting the above language); *Novak v. Andersen Corp.*, 962 F.2d 757, 760 (8th Cir. 1992) (same); *Sokol v. Bernstein*, 803 F.2d 532, 538 (9th Cir. 1986) (same).

benefits were wrongfully withheld or wrongfully delayed, that is, . . . withheld or delayed in violation of ERISA or an ERISA plan." 319 F.3d at 617.[29] If benefits were wrongfully withheld, "interest is presumptively appropriate . . . unless exceptional or unusual circumstances exist making the award of interest inequitable [, such as] bad faith or dilatoriness by the claimant." *Id.* at 618 (internal quotation marks and citations omitted).[30]

---

[29] Our determination in *Fotta II* that a district court must consider whether benefits were wrongfully withheld or wrongfully delayed was based on the fact that § 502(a)(3)(B) "does not . . . authorize appropriate equitable relief *at large*, but only 'appropriate equitable relief' for the purpose of 'redress[ing any] violations or enforc[ing] any provisions of ERISA or an ERISA plan." *Fotta II*, 319 F.3d at 616 (quoting *Fotta I*, 165 F.3d at 213 (citing *Mertens*, 508 U.S. at 253)) (internal quotation marks omitted; emphasis in original).

Of course, to the extent that Skretvedt seeks prejudgment interest on his incapability benefits, which were awarded by court judgment pursuant to § 502(a)(1)(B), wrongful withholding or wrongful delay is not *per se* relevant, as prejudgment interest in that context derives from § 502(a)(1)(B) and the District Court's exercise of discretion in awarding interest. *See supra* Section V-A.

[30] *Great-West* may have changed the nature of how "interest" is to be calculated

in an award for the delayed payment of benefits under ERISA § 502(a)(3)(B) since our prior holding in *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 131-34 (3d Cir. 2000). In *Holmes*, we held that a District Court did not abuse its discretion in awarding interest on the delayed payment of pension benefits under the Treasury Bill yield rate as calculated in 28 U.S.C. § 1961 because, according to the District Court in that case, requiring the ERISA plan to disgorge its profits "would be essentially punitive in nature, and . . . punitive measures were inappropriate where the delayed payment of benefits was inadvertent rather than intentional." *Id.* at 132 (internal quotation marks and citations omitted).

To the extent that Skretvedt seeks on remand a constructive trust to disgorge the gain of his ERISA plans, it would seem, in light of *Great-West*, that the actual gain (if any) made on withheld benefits would be an appropriate subject of a constructive trust. *See* Dobbs § 4.3(2), at 592 ("The constructive trust has [an] especially important characteristic[:] . . . under the rules for following property or money into its product, the plaintiff may obtain . . . gains received by the defendant from the property's increase in value. . . ."").

However, the Eighth Circuit in *Parke*, applying the accounting for profits remedy, has noted that

[a] defendant . . . "gains" from the wrongful

withholding of the plaintiff's benefits even if the plaintiff does not prove specific financial profit. In particular, the defendant receives a benefit from having control over the money. *See* [Dobbs] § 3.6(2), at 344 n.22 ("[U]ntil the plaintiff is paid, the defendant has the use of funds that ought to go to the discharge of his obligation of the plaintiff. That is a benefit. The defendant may [choose] not [to] use the funds or collect interest on them. Nevertheless, he has a benefit found in his power to do so.").

*Parke*, ___ F.3d at ___, 2004 WL 1144787, at *7 (third alteration in original). Thus, while *Parke* suggested that it may be possible to disgorge a defendant's actual gain if "specific financial profit" can be shown, the Court concluded that "[i]n the particular context of withheld benefits under ERISA, . . . [i]nterest is, in many respects, the only way to account for this gain and therefore is an appropriate measure of the extent to which [a defendant] was unjustly enriched." *Id.* In reaching that conclusion, *Parke* relied on a section of Dobbs suggesting that interest, as opposed to a defendant's actual gain, is available as restitution where the defendant "has had

## C. Postjudgment Interest

28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." *Id.* Skretvedt seeks postjudgment interest, presumably on any award of interest and prejudgment interest he receives on remand from this opinion and to the extent DuPont delayed in paying incapability benefits after the Magistrate Judge's December 13, 2001, judgment.[31]

With respect to Skretvedt's

---

the use of money . . . to which the plaintiff was entitled" but "did not actually reap interest or profits." Dobbs § 3.6(2), at 344. This treatise indicates that the "clearest case for [such interest] liability for unrealized gains occurs with fiduciaries who are under a duty to invest funds for the benefit of the plaintiff but fail[] to do so." *Id.* at 345.

We need not, and cannot, address today whether interest or actual gain is to be awarded to Skretvedt under § 502(a)(3)(B), however, as the Magistrate Judge could determine that Skretvedt is not entitled to such an award under *Fotta II* and a record has not been developed as to the actual gain, if any, made by the relevant ERISA plans.

[31] As noted *supra*, no judgment exists with respect to T&P benefits. Accordingly, there is no basis for an award of postjudgment interest under § 1961 with respect to these benefits.

underlying incapability benefits award, there was a delay between the Magistrate Judge's December 13, 2001, judgment awarding incapability benefits and DuPont having paid those benefits on March 6, 2002, with further adjustments made on April 15 and 16, 2002. Several circuit courts have held that an award of postjudgment interest on benefits awarded pursuant to ERISA § 502(a)(1)(B) is mandatory under 28 U.S.C. § 1961 if requested.[32] The Supreme Court has

determined that postjudgment interest under § 1961 "properly runs from the date of the entry of judgment." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990). The fact that the December 13, 2001, judgment was not a final order for purposes of appeal would not otherwise prevent postjudgment interest from running under § 1961 pursuant to a timely request from Skretvedt. We stated in *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1177-78 (3d Cir. 1993), that § 1961 "does not, by its terms, mandate that the judgment from which interest is calculated must be a final judgment. Our view is consistent with the statute's philosophy of providing compensation from a point at which the loss-causing defendant's liability is entered on record."

---

[32] *See, e.g.*, *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 224 (1st Cir. 1996) ("ERISA provides for postjudgment interest to be calculated at the federal rate, 28 U.S.C. § 1961(a) (1994)"); *Quesinberry v. Life Ins. Co. of North Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (*en banc*) ("In contrast to the district court's discretion in the awarding of pre-judgment interest, federal law mandates the awarding of post-judgment interest. 28 U.S.C. § 1961 (1988). While ERISA does not specifically address post-judgment interest, it does provide that the statute is not to be construed to 'alter, amend, modify, invalidate, impair, or supersede any law of the United States.' 29 U.S.C. § 1144(d) (1988). Therefore, the federal post-judgment interest statute, 28 U.S.C. § 1961 (1988), is applicable in ERISA cases."); *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002) ("The statute mandates the imposition of post-judgment interest, thus removing the award of such interest from the discretion of the District Court. The federal

postjudgment interest statute allows interest on "all money judgments," including those in ERISA cases.") (internal citations and quotation marks omitted); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1331 (8th Cir. 1995) ("28 U.S.C. § 1961 provides the proper measure for determining rates of both prejudgment and postjudgment interest" in ERISA cases); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n, Inc. et al.*, 948 F.2d 1219, 1226 (11th Cir. 1991) (upholding application of § 1961 to an ERISA award); *I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Slyman Indus., Inc.*, 901 F.2d 127, 130 (D.C. Cir. 1990) (same).

*Id.*[33]

However, while postjudgment interest can begin to accrue on a non-final judgment under *Iron Ore*, the phrase "any money judgment" in § 1961(a) "requires that the judgment at issue award a fixed amount of fees to the prevailing party in order to trigger the post-judgment interest period." *Eaves v. County of Cape May*, 239 F.3d 527, 534 (3d Cir. 2001). As we have noted, however, the judgment entered with respect to incapability benefits on December 13, 2001, did not quantify a monetary amount. Accordingly, postjudgment interest under § 1961 did not begin to accrue on that date because no "*money* judgment" had been entered. Absent the existence of a "*money* judgment," Skretvedt is, therefore, unable

to pursue postjudgment interest with respect to DuPont's four month delay in paying incapability benefits.

With respect to postjudgment interest on the Magistrate Judge's award of any prejudgment interest for incapability benefits, postjudgment interest should be calculated based upon the underlying judgment and award of prejudgment interest. *See Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986); *see generally Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002) ("postjudgment interest should be awarded on the entire amount of the judgment, including any prejudgment interest") (noting agreement among the Fourth, Ninth, Tenth, and Eleventh Circuit Courts). Accordingly, Skretvedt could receive postjudgment interest on any award of prejudgment interest under ERISA § 502(a)(1)(B) with respect to incapability benefits, should the Magistrate Judge award prejudgment interest in exercising her discretion, as discussed above in Section V-A.

There is some question, however, as to whether § 1961 applies to a judgment obtained pursuant to an equitable remedy,[34] which would affect the

---

[33] A circuit split has developed on this issue, however. The Ninth Circuit, looking to "practical considerations," has determined that postjudgment interest under § 1961 begins to run only where a final, appealable judgment has been entered. *See Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 990-91 (9th Cir. 2001) ("'judgment' within the meaning of 28 U.S.C. § 1961 means 'final, appealable order'"). The Sixth Circuit, implicitly agreeing with *Iron Ore*, has determined that "the better rule is for plaintiffs to be entitled to post-judgment interest from the date of entry of the initial, partial judgment . . . , even though that judgment was not yet appealable." *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 429 (6th Cir. 1999).

[34] We expressed this concern in *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987):

> In *Perkins v. Fourniquet*, 55 U.S. (14 How.) 328, 330, 14 L.Ed. 441 (1853), the

availability of post-judgment interest on an award of interest for the delayed payment of T&P benefits under ERISA § 502(a)(3)(B). We need not address this issue today, as the Magistrate Judge might determine that Skretvedt is not entitled to a constructive trust for interest under *Fotta II* because there was not a wrongful withholding of or delay in paying T&P benefits.

## Conclusion

We reverse the Magistrate Judge's August 21, 2002, and November 12, 2002, orders only with respect to their denial of: (1) prejudgment interest on the award of incapability benefits; (2) interest on the delayed payment of T&P benefits; and (3) postjudgment interest on both of those awards. We remand for the Magistrate Judge to reconsider in the first instance whether Skretvedt is entitled in light of this opinion to prejudgment interest on the award of incapability benefits and/or interest on the delayed payment of T&P benefits, without prejudice to Skretvedt's ability to file a timely motion for postjudgment interest on any resulting award of prejudgment interest (with respect to incapability benefits) or interest (with respect to T&P benefits). The appeal is dismissed otherwise to the extent it seeks to address claims raised in the complaint other than Counts I and V for incapability and T&P benefits, respectively.

---

> Supreme Court held that the predecessor statute to section 1961[] did not apply to equitable decrees, relying on the use of the word "judgment", as distinguished from "decree", the equitable counterpart. Chief Justice Taney explained that, "[the statute] is confined, in plain terms, to judgments at law." *Id.*

*Id.* at 125-26 (noting a "hesitancy" to interpret § 1961 as mandating postjudgment interest on back-pay awards under the Fair Labor Standards Act when those awards are procured under a section of that Act arguably providing for relief that is equitable in nature, but nonetheless allowing for postjudgment interest on other grounds) (footnote omitted).