**Darrin ROBINSON, Appellant**

v.

**Phillip JOHNSON; Jeffrey Forte; Daniel E. Hooper; Martin Horn; Joseph Essedy (or ECSEDY); Robert Onstott, in their individual capacities.**

No. 08–1818.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 23, 2009.

Filed: Aug. 27, 2009.

Margaret W. Schuetz, Esq., Mary Walsh, Esq., Community Justice Project, Pittsburgh, PA, for Appellant.

Kemal A. Mericli, Esq., Office of Attorney General of Pennsylvania, Pittsburgh, PA, for Phillip Johnson; Jeffrey Forte; Daniel E. Hooper; Martin Horn; Joseph Essedy (or ECSEDY); Robert Onstott, in their individual capacities.

Before: SCIRICA, Chief Judge,
SLOVITER and FISHER, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Darrin Robinson appeals from the Magistrate Judge's order granting summary judgment in favor of defendants Martin Horn and Phillip Johnson. We will reverse the Magistrate Judge's order and remand the case for further proceedings consistent with this opinion.

### I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In June 2002, Darrin Robinson was an inmate in the Restricted Housing Unit (RHU) at the State Correctional Institution at Pittsburgh, Pennsylvania (SCI–Pittsburgh). At the time, policies in force at SCI–Pittsburgh mandated that prisoners housed in the RHU were periodically to be taken outside for exercise, where they were to be placed in special "cages" designed for that purpose. Under prison procedures, corrections officers were to place two handcuffed prisoners in an exercise cage at one time and then, while standing outside the cage, reach through a slot to remove each prisoner's handcuffs.

On June 26, 2002, Corrections Officer Robert Onstott, following this procedure, handcuffed Robinson's hands behind his back and put him in an outdoor exercise cage with another inmate from the RHU, Troy Cooper. Cooper's handcuffs were removed first. As soon as Cooper's hands were free, he attacked Robinson, whose hands were still bound, stabbing him repeatedly in the face and neck with an improvised knife fashioned from a plastic food tray, before ultimately being subdued.

On June 28, 2002, Robinson filed a grievance concerning the incident under Pennsylvania's Inmate Grievance System Policy, DC–ADM 804, in which he wrote that he was taken to the cage "as per procedure," recounted his injuries, and requested that "disciplinary actions be taken against those responsible for this neglect, a change in procedures that allow for protection, and money to compensate for [his] injuries and any future and present medical care." App. 39. Robinson's grievance went through all three stages of review within Pennsylvania's Inmate Grievance System and was denied at each stage.

Robinson then filed this civil rights complaint under 42 U.S.C. § 1983 against Horn, the then-Secretary of the Pennsylvania Department of Corrections; Johnson, the then-Superintendent of SCI–Pittsburgh; Corrections Officer Onstott; and three other prison guards. In his complaint, Robinson alleged that the defendants failed to protect him from being attacked by Cooper, in violation of the Eighth Amendment.

The parties consented to adjudication by a Magistrate Judge, and the defendants moved for summary judgment. Ultimately, the Magistrate Judge granted summary judgment in favor of all defendants. As relevant here, the Magistrate Judge granted summary judgment in favor of Horn and Johnson because, she concluded, Robinson procedurally defaulted his claims against them by failing to identify them by name in his grievance. This timely appeal followed.

## II.

The Magistrate Judge presided by consent under 28 U.S.C. § 636(c) and had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. *See Skretvedt v. E.I. DuPont de Nemours,* 372 F.3d 193, 200 & n. 7 (3d Cir.2004). We have jurisdiction under 28 U.S.C. §§ 636(c)(3) and 1291. *See Skretvedt,* 372 F.3d at 200 n. 7 (citing *Abrams v. Lightolier Inc.,* 50 F.3d 1204, 1209 n. 1 (3d Cir.1995)). We exercise plenary review over a district court's decision to grant summary judgment, applying the same standard the district court should apply. *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir.2009); *Williams v. Beard,* 482 F.3d 637, 639 (3d Cir.2007). Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts must be viewed in the light most favorable to the nonmoving party and all reasonable inferences from the evidence must be drawn in that party's favor. *Conopco, Inc. v. United States,* 572 F.3d 162, 165 (3d Cir.2009).

## III.

Under the Prison Litigation Reform Act of 1995 (PLRA), a prisoner may not bring a § 1983 suit with respect to prison conditions—such as this suit—"until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement contains a procedural default component; in other words, exhaustion under § 1997e(a) is " 'proper exhaustion,' meaning that the prisoner must comply with all the administrative

requirements and not merely wait until there are no administrative remedies 'available.' " *Williams,* 482 F.3d at 639 (quoting *Woodford v. Ngo,* 548 U.S. 81, 92–103, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)); *accord Spruill v. Gillis,* 372 F.3d 218, 227–30 (3d Cir.2004). " '[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion [under § 1997e(a) ]." *Williams,* 482 F.3d at 639 (quoting *Spruill,* 372 F.3d at 231); *see Jones v. Bock,* 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

▮ Here, Horn and Johnson do not contest that Robinson "exhausted his administrative remedies in the literal sense"; he pursued his grievance through Pennsylvania's Inmate Grievance System until there were no "further avenues of relief ... available to him" within that system. *Spruill,* 372 F.3d at 232. This dispute centers instead on the procedural default component of the PLRA's exhaustion requirement. Specifically, the defendants assert that Robinson procedurally defaulted his claims against them by failing to identify them by name in his grievance. In this regard, they point to a passage from Pennsylvania's Inmate Grievance System Policy, which provides in relevant part:

> "The inmate shall include a statement of the facts relevant to the claim.... The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally. The inmate may also specifically state any claims he/she wishes to make concerning violations of Department di-

rectives, regulations, court orders, or other law."

App. 47–48 (DC–ADM 804, Part VI.A.1.g).

In *Spruill,* we interpreted an earlier—but in all material respects identical—version of this paragraph. 372 F.3d at 232–35. In doing so, we explained that "[t]he verbs in this paragraph establish three tiers of grievance components: items that are mandatory ('shall'); items that are required to the extent practicable ('should'); and items that are optional ('may')." *Id.* at 233. Here, then, under *Spruill,* if the identities of Horn and Johnson were "facts relevant to the claim" then it was mandatory for Robinson to name them in his grievance; if they were "persons who may have information" or with whom Robinson made "attempts to resolve the matter informally" then Robinson was required to identify them if practicable; and if they did not fall into any of these categories then Robinson was not required to identify them at all. *See Spruill,* 372 F.3d at 234.

We are unconvinced by our review of the record that the defendants' names were facts relevant to Robinson's grievance or that Robinson made attempts to resolve the matter informally with them. And while the defendants surely had information that could have been helpful in resolving Robinson's grievance, we are skeptical that they have met their burden of demonstrating that it was "practicable" for Robinson to identify them as the relevant policymakers; the evidence in the record tends to show that prisoners at SCI–Pittsburgh did not have access to the policies and procedures governing the administration of security in the RHU, much less the identities of the prison officials responsible for formulating and implementing those policies and procedures. Indeed, during discovery, Johnson objected to Robinson's request for production of the relevant procedures manual on the ground that it was

"privileged and confidential" and that "[p]roducing this documents [sic] could pose ... a security risk for inmates, staff and/or the institution." S.App. 61. On this record, we do not believe that Robinson procedurally defaulted his claims against Horn and Johnson.

■ In any event, even if Robinson had procedurally defaulted his claims against Horn and Johnson by failing to identify them in his grievance, the prison's grievance process excused those procedural defaults. The Initial Review Response (IRR) to Robinson's grievance—the first-level determination of his grievance under the Inmate Grievance System Policy—noted that "[t]he yard procedures for R.H.U. inmates has been modified." App. 40; *see* App. 48–50 (DC–ADM 804, Part VI.B); *cf. Spruill*, 372 F.3d at 232 (discussing the "three stages of review within Pennsylvania's Grievance System"). And Johnson personally denied Robinson's "Appeal to Facility Manager"—the second stage of review under the Inmate Grievance System Policy, *see* App. 50–51 (DC–ADM 804, Part VI.C)—indicating in his written response: "It is unfortunate that this assault happened to you at SCI–Pittsburgh, but RHU yard procedures have been modified to prevent something like this from happening again." App. 42. "'The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" *Williams*, 482 F.3d at 640 (quoting *Jones*, 549 U.S. at 219, 127 S.Ct. 910). These documents indicate that Robinson's grievance succeeded in this purpose, "evidenc[ing] knowledge on the part of prison officials ... that there was a problem," *id.*, and acknowledging that the relevant policymakers, Horn and Johnson, were "fairly within the compass" of Robinson's grievance, *Spruill*, 372 F.3d at 234.

## IV.

For the foregoing reasons, we will reverse the Magistrate Judge's order granting summary judgment in favor of Horn and Johnson and remand this action to the Magistrate Judge for further proceedings consistent with this opinion.