**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1285
_____

DARRIN ROBINSON,
                                        Appellant

v.

PHILIP JOHNSON; JEFFREY FORTE; DANIEL HOOPER; MARTIN HORN;
JOSEPH ESSEDY (or ECSEDY); ROBERT ONSTOTT, in their individual capacities
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 03-cv-01545)
Magistrate Judge:  Honorable Lisa Pupo Lenihan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 25, 2011

Before:  SCIRICA, GREENAWAY, JR. and VAN ANTWERPEN, Circuit Judges

(Opinion Filed:  October 28, 2011)

_____

OPINION OF THE COURT
_____

PER CURIAM.

        Darrin Robinson, a Pennsylvania prisoner proceeding pro se, appeals a judgment

entered in favor of Martin Horn, former Secretary of the Commonwealth of

Pennsylvania's Department of Corrections, and Philip Johnson, former Superintendent of

SCI-Pittsburgh, after a bench trial in his civil rights action. For the reasons that follow, we will affirm the judgment of the District Court.

Robinson, through counsel, filed a complaint pursuant to 42 U.S.C. § 1983 against Secretary Horn, Superintendent Johnson, and several corrections officers claiming a violation of his Eighth Amendment rights arising from an attack by another inmate which resulted in serious injuries. The parties consented to adjudication by a Magistrate Judge, who granted summary judgment in favor of all of the defendants. On appeal, we reversed the Magistrate Judge's decision that Robinson had procedurally defaulted his claims against Secretary Horn and Superintendent Johnson. See Robinson v. Johnson, 343 F. App'x 778, 782 (3d Cir. 2009) (unpublished decision).

Robinson's claims against Johnson and Horn proceeded to a two-day bench trial after which the Magistrate Judge issued findings of fact and conclusions of law. The Magistrate Judge found that on June 26, 2002, Robinson, who was housed in the Restricted Housing Unit ("RHU"), was placed in a fenced exercise yard, also referred to as an exercise cage, with three other inmates. All four inmates wore handcuffs, which would be removed while they exercised. Inmate Troy Cooper's handcuffs were removed first. As soon as his cuffs were removed, Cooper attacked Robinson, who was still cuffed, with a sharp piece of plastic, which Cooper had smuggled into the yard. Robinson suffered wounds to his face, head, hands, and knee, which required hospitalization and minor surgery. Robinson testified that he had no idea that Cooper was a threat to him. He and Cooper had exercised in the same cage before.

2

The Magistrate Judge found that Secretary Horn was responsible for the day-to-day oversight of the Pennsylvania prison system and for approving department-wide policies. Under Department of Corrections Policy 6.5.1, RHU inmates are to exercise one person per yard, but two inmates may be placed in a yard when there is inadequate space to accommodate the demand for exercise. Horn was Secretary when Policy 6.5.1. was implemented, but was no longer Secretary on the date of the incident at issue.

The Magistrate Judge also found that SCI-Pittsburgh routinely exercised up to four RHU inmates in a single yard and up to five inmates in a larger center yard. Had SCI-Pittsburgh exercised one person per cage, RHU staff would not have been unable to do anything else during the day other than exercise the inmates.[1] Corrections officers search the exercise cages for contraband and conduct visual strip searches of RHU inmates before they are escorted to the cages to exercise. The officers remove inmates' handcuffs one at a time through an aperture in the fence. For a brief period of time, an inmate wearing handcuffs is exposed to an inmate without handcuffs. There was evidence of twelve alleged or actual altercations in RHU exercise yards from January 2001 to June 2002, one of which involved an uncuffed inmate attacking a cuffed inmate. Johnson testified there were about ten fights between uncuffed inmates in RHU exercise yards from 1995 to 2002, when he was Superintendent at SCI-Pittsburgh and two other prisons.

---

[1]Superintendent Johnson testified that approval must have been obtained from the Department of Corrections' central office for the practice of placing more than two RHU inmates in an exercise yard. The Magistrate Judge found, and the record reflects, that there was no evidence presented establishing such approval.

In rejecting Robinson's Eighth Amendment claim, the Magistrate Judge concluded that Robinson failed to show that Horn and Johnson acted with deliberate indifference to his safety when they approved and/or implemented Policy 6.5.1, which resulted in cuffed and uncuffed inmates commingling briefly inside the RHU exercise yards. The Magistrate Judge explained that there were an insufficient number of attacks to prove knowledge of an unreasonable risk of harm. The Magistrate Judge also noted that the staff searches the exercise cages and RHU inmates for contraband and that Robinson, who had been in and out of the RHU over his twenty-year period of incarceration, had not been previously exposed to danger. The Magistrate Judge further concluded that Robinson had not established an obvious risk of harm and stated that intermingling cuffed and uncuffed inmates in various settings is a fact of prison life. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. When a district court conducts a non-jury trial, we review the district court's findings of fact for clear error and exercise plenary review over its application of the law to the facts. Trustees of the Nat'l Elevator Industry Pension, Health Benefit and Educ. Funds v. Lutyk, 332 F.3d 188, 191 (3d Cir. 2003).

Robinson first argues in his brief that his counsel made various errors during the course of his representation. Robinson contends that he told his attorney that he wanted a jury trial but his attorney arranged for a bench trial without his consent. He also states that his attorney failed to call three guards to testify. Robinson is also unhappy his case

4

was handled by several lawyers and he believes they "made a mockery" of his case. Robinson seeks a new trial before a jury.

Unlike a criminal defendant, a civil litigant does not have a constitutional right to effective assistance of counsel. Kushner v. Winterthur Swiss Ins. Co., 620 F.2d 404, 408 (3d Cir. 1980). The proper remedy for defective representation in a civil action is not a new trial but a malpractice action against the offending attorney. Stanciel v. Gramley, 267 F.3d 575, 581 (7th Cir. 2001); Kushner, 620 F.2d at 408. Robinson's dissatisfaction with counsel's representation does not provide a basis for a new trial. In addition, Robinson's participation without objection in the bench trial waives any Seventh Amendment right to a jury trial. In re City of Philadelphia Litig., 158 F.3d 723, 727 (3d Cir. 1998).

Robinson also challenges the Magistrate Judge's conclusion that there was insufficient evidence to establish that Horn and Johnson were aware of a substantial risk of harm. He asserts that it is undisputed that RHU inmates are highly assaultive, that inmates requiring protection exercise with violent inmates, that a handcuffed inmate could not defend himself if attacked, that eleven exercise cage assaults had been documented in the two years before he was attacked, that Horn and Johnson agreed there is a potential for trouble when an uncuffed inmate is in the presence of a cuffed inmate, and that SCI-Pittsburgh exercised up to five RHU inmates together. Robinson argues that the assaults were regular and predictable and that Horn and Johnson cannot escape liability because they were unaware that he was likely to be assaulted.

5

Prison officials have a duty to protect inmates from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). As recognized by the Magistrate Judge, in order to establish an Eighth Amendment violation, Robinson was required to show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to that risk. Id. at 834. Deliberate indifference requires that a prison official know of and disregard an excessive risk to inmate health or safety. Id. at 837.

Whether an official had the requisite knowledge of a substantial risk is a question of fact, which may be shown by circumstantial evidence. Id. at 842. Evidence showing that a risk was obvious may be sufficient to show actual knowledge. Id. Evidence, for example, showing that a substantial risk of inmate attacks was pervasive or well-documented and that officials had been exposed to information about the risk may be sufficient. Id. at 842-43. As Robinson asserts, an official may not escape liability by showing that, while he was aware of a substantial risk to inmate safety, he did not know the complainant was likely to be assaulted. Id. at 843. Finally, an official's duty under the Eighth Amendment is to ensure "reasonable safety" and, even if an official is aware of a substantial risk to inmate safety, an official may not be liable if he responded reasonably to the risk. Id. at 844.

Applying these principles, we find no error in the Magistrate Judge's conclusion that Robinson failed to establish that Horn and Johnson were deliberately indifferent to a substantial risk of harm. It is undisputed that Robinson did not expect any harm from

6

Cooper. The evidence does not establish that Horn or Johnson was exposed to information indicating that either the prison policy or SCI-Pittsburgh's practice regarding RHU exercise, which allowed more than one inmate in an exercise yard and resulted in a cuffed inmate being exposed briefly to an uncuffed inmate, posed a substantial risk of harm. The number of fights that occurred in RHU exercise yards was small. Johnson described such occurrences as "pretty rare," noting that "most of the time the guys wanted to exercise together." 6/7/10 Trial Trans. at 157. Horn and Johnson also testified that no one had ever raised concerns during staff meetings or visits to the RHU regarding the practice of having cuffed inmates exposed to uncuffed inmates in the exercise yards.

Robinson correctly states in his brief that a claimant need not show a particular number of incidents before a claim of deliberate indifference to a substantial risk of harm is successful. See Farmer, 511 U.S. at 845 (noting availability of injunctive relief to remedy unsafe conditions). At trial, Robinson sought to show that Horn and Johnson knew that a substantial risk of harm existed when a cuffed inmate was exposed to an uncuffed inmate in the exercise yard because the risk was obvious. Steven Martin, Robinson's expert witness on management of maximum security prisons, testified that commingling cuffed and uncuffed inmates in the RHU exercise space makes the cuffed inmate vulnerable and creates a condition that a potential attacker will exploit. Martin further testified that a policymaker would be aware of this risk. Martin, however, also testified that he had often seen commingling in the maximum security setting, typically when a cuffed inmate is escorted across an open yard with unrestrained inmates. Both

7

Horn and Johnson also testified, and Martin agreed, that commingling cuffed and uncuffed inmates occurs in other circumstances, such as when a double-celled RHU inmate must leave his cell and he is cuffed in the presence of an uncuffed cellmate. The record thus supports the Magistrate Judge's conclusion that such commingling is a fact of prison life.

The record does not reflect that either Horn or Johnson perceived the brief period when a cuffed inmate is exposed to an uncuffed inmate in the exercise yard as presenting a substantial risk of harm. As noted by the Magistrate Judge, staff also took measures to minimize any risk of harm by searching the exercise yards and the RHU inmates. Based on the evidence submitted at trial, we cannot conclude that either defendant was deliberately indifferent to a substantial risk of harm.

Accordingly, we will affirm the judgment of the District Court.